Gary D. Sesser
Ronald D. Spencer
Judith M. Wallace
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
(212) 732-3200
*Attorneys for Defendants Archivio Alighiero Boetti,*
*Agata Boetti, Matteo Boetti and Annemarie Sauzeau*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SPERONE WESTWATER INC. and          :     Index No. 08 CV 03263 (RJH)
SPERONE WESTWATER GALLERY, LLC,     :     (THK)
                                    :
                  Plaintiffs        :
                                    :
            - against -             :     **DECLARATION OF GARY D.**
                                    :     **SESSER IN SUPPORT OF**
                                    :     **MOTION TO DISMISS THE**
ARCHIVIO ALIGHIERO BOETTI, AGATA    :     **COMPLAINT**
BOETTI, MATTEO BOETTI and           :
ANNEMARIE SAUZEAU,                  :
                                    :
                  Defendants.       :
                                    :
------------------------------------------------------------X

       Gary D. Sesser hereby declares, under penalty of perjury, that the following is true and correct:

      1.    I am a member of the law firm of Carter Ledyard & Milburn LLP, located at 2 Wall Street, New York, New York 10005, attorneys for the Archivio Alighiero Boetti (the "Archivio"), Agata Boetti ("Agata"), Matteo Boetti ("Matteo") and Annemarie Sauzeau (collectively, "Defendants") in the above-captioned action. I submit this declaration in support of Defendants' Motion to Dismiss the Complaint.

6339486.3

2.       This motion is filed pursuant to an Order signed by this Court on June 13, 2008, in which Defendants were permitted to file a motion to dismiss the complaint and motion to stay discovery on or before July 14, 2008.   The Court also granted Defendants' request to extend the page limit for Defendants' memorandum of law in support of their Motion to Dismiss to 35 pages.

3.       This action is essentially a response to a lawsuit brought by Defendants in Milan, Italy (the "Milan Action") in January 2008 to confirm their rights under Italian law to carry out the mission of the Archivio. The parties to the Milan Action are the Archivio, Ms. Sauzeau, and Agata and Matteo, as plaintiffs, and Renato Cardi ("Cardi"), the Galleria Cardi (the "Cardi Gallery"), Sperone Westwater, Inc. and Sperone Westwater LLC, as defendants.

4.       The declaration of Annemarie Sauzeau, Director of the Executive Committee of the Archivio, sworn to on July 1, 2008 is also submitted in support of Defendants' motion.  Ms. Sauzeau's declaration sets forth the relevant facts of which she has direct knowledge concerning the purpose and activities of the Archivio, its connections to Italy, and the location of witnesses and documents in Italy.

5.       The declaration of Professor Andrea Barenghi, counsel for Defendants in the proceeding commenced in Milan, sworn to on July 1, 2008, is likewise submitted in support of Defendants' motion.  Professor Barenghi's declaration sets forth his background, summarizes the context and causes of action at issue in the Milan action, notes the basic issues of Italian law in the Milan action, and the basic issues with respect to gathering of evidence in Italy.

6.       Defendants provide notice pursuant to Federal Rule of Procedure 44.1 of intent to rely on Italian law concerning discovery procedures in Italy in connection with foreign legal proceedings.

-2-

6339486.3

7.      Annexed as **Exhibit A** to Professor Barenghi's declaration (the "Barenghi Declaration") is a true and correct copy of the Writ of Summons in the Milan Action, in Italian. Annexed as **Exhibits 1 to 14** to Exhibit A are true and correct copies of fourteen documents filed with the Milan tribunal in the Milan action. Annexed as **Exhibit B** to the Barenghi Declaration is a true and correct copy of the English translation of the Writ of Summons, which was served on Plaintiffs along with the Italian version.

8.      Annexed as **Exhibit A** to this Declaration is a true and correct copy of the opinion of the New York Supreme Court, New York County, in *Thome v. Alexander & Louisa Calder Foundation*, No. 600823/07 (Sup. Ct. N.Y. County Apr. 17, 2008), a decision not available on Westlaw or Lexis.

Declaration pursuant to 28 U.S.C. §1746.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2008.

Gary D. Sesser

6339486.3

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:  _____ Charles Edward Ramos _____        PART ____53____

Index Number : 600823/2007

THOME, JOEL

vs

ALEXANDER & LOUISA CALDER

Sequence Number : 001

DISMISS ACTION

INDEX NO.        _____

MOTION DATE        _____

MOTION SEQ. NO.        _____

MOTION CAL. NO.        _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

**Cross-Motion:**  ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion

<div style="writing-mode:vertical">MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):</div>

IS DISPOSED OF IN ACCORDANCE WITH THE ACCOMPANYING MEMORANDUM DECISION.

**FILED**

APR 2 9 2008

COUNTY CLERK'S OFFICE
NEW YORK

Dated: ____4/7/08____

CHARLES E. RAMOS

Check one:  ☑ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate:        ☐ DO NOT POST

Check if appropriate:        ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION
------------------------------------------------X
JOEL THOME,

                    Plaintiff,

            -against-                          Index No.
                                               6̶0̶823/07

THE ALEXANDER & LOUISA CALDER FOUNDATION
a/k/a THE CALDER FOUNDATION, HOWARD ROWER,
ALEXANDER S.C. ROWER, MARY CALDER ROWER,
SANDRA CALDER DAVIDSON and SHAUN DAVIDSON,

                    Defendants,

------------------------------------------------X

**Charles Edward Ramos, J.S.C.:**

     This action raises an issue of first impression, namely,

whether a foundation dedicated to the preservation of an artist's

work and legacy has a duty to the public to authenticate works

alleged to be created by the artist.

     Defendants The Alexander & Louisa Calder Foundation

(Foundation), Alexander S.C. Rower, Mary Calder Rower, Sandra

Calder Davidson, and Shaun Davidson (together, defendants) move

to dismiss the complaint, based upon the statute of limitations

and for failure to state a cause of action (CPLR 3211 [a] [5],

[7]).

     Plaintiff Joel Thome cross-moves to convert the motion to

one for summary judgment, and to permit the parties to submit

additional evidence (CPLR 3211 [c]).  Alternatively, Thome

requests leave to replead.

                          **Background**

     Thome alleges that in 1976, he had the idea of reviving a

1936 production of "Socrate," a French musical.  The stage set of

that production had been designed by the artist Alexander Calder. However, after the close of production, the set was destroyed. As part of his revival of that 1976 production, Thome alleges that he contacted Calder, to inquire about re-creating the set. Calder was allegedly delighted at the idea, and over the next several months, Thome alleges that he worked alongside Calder, a Calder restoration specialist, a fine arts professor, and an architect to prepare drawings and eventually, reconstruct the set (Set).[1] Thome financed the entire project.

In late 1976, before Socrate's scheduled re-opening, Calder died unexpectedly. Exactly a year after his death, the performance finally went forward with favorable reviews. After the close of production, Thome placed the Set in storage, where it remains to this day.

In 1988, the Foundation was created as a charitable, not-for-profit corporation by Calder's surviving family members to preserve his legacy, and to maintain a "catalogue raisonne" (Catalogue), a catalogue of Calder's works. The Foundation has documented more than 17,000 works created by Calder.

In 1997, Thome submitted documentation relating to the Set in order for the Foundation to authenticate it, and assign it a Catalogue number. On September 15, 1997, the Foundation acknowledged receipt of the material (Exhibit J, annexed to the Thome Affidavit). Subsequently, Thome alleges that he had a

---

[1] The Set is comprised of a large stage set, a smaller version suitable for smaller theatrical venues, a maquette for the stage set, and documents created around that time.

2

telephone discussion with defendant Alexander Rower, the director
of the Foundation, concerning how the Set would be described in
the Catalogue.  Rower allegedly promised that the Set would be
included in the Catalogue in a manner to be determined at a later
point.

Thereafter, Thome suffered a stroke.  While he was
recuperating, he submitted additional materials to the
Foundation, in further attempts at obtaining authentication of
the Set.  Despite Thome's continued efforts over several years,
the Foundation had yet to authenticate the Set or issue a
Catalogue number for it.

In March of 2004, Thome alleges that he received an offer to
purchase the Set for $150,000.  However, the undisclosed buyer
requested an authentication delivered by the Foundation as a
condition to purchase, that Thome was unable to obtain in time.
He alleges that he lost the deal.

Between December and March of 2005, Thome attempted to
negotiate the sale of the Set to another purchaser, an art
collector, for $175,000.  Again, authentication was an essential,
contingent term of purchase.  The art collector allegedly
contacted the Foundation inquiring about whether the issuance of
a Catalogue number would be forthcoming; the Foundation did not
respond.  The situation did not change, and the sale of the Set
did not go forward.

The last communication that Thome received from the
Foundation was in 1997, when it responded that it had received

3

the materials that he submitted, and would review them.  To this day, the Foundation has not authenticated the work or issued a Catalogue number.

In March of 2007, Thome commenced this action.  He seeks a declaratory judgment that the Set is an authenticate Calder, and a mandatory injunction compelling the defendants to issue a Catalogue number.  Additionally, he asserts causes of action for tortious interference with prospective business advantage, breach of contract, conflict of interest, breach of fiduciary duty, civil conspiracy and product disparagement.

### Discussion

For the reasons stated below, affording the complaint a liberal construction, accepting the facts alleged as true and according the plaintiff the benefit of every favorable inference (Allianz Underwriters Ins. Co. v Landmark Ins. Co., 13 AD3d 172, 174 [1st Dept 2004]), the facts alleged fail to state causes of action, and the applicable statute of limitations bars the action.

In support of his cause of action for breach of contract, Thome argues that by its open offer inviting owners of Calder works to submit them for authentication and to obtain a Catalogue number, the Foundation is implicitly acknowledging to evaluate works submitted for authentication in good faith.  Further, he alleges that an enforceable agreement was created between him and the Foundation in 1997, when it accepted his submission of materials concerning the Set.  According to Thome, acceptance by

4

the Foundation came in the form of a transmittal of a postcard to

Thome with a message stating,

> "Thank you for the information which you submitted to
> our office ... We are now in receipt of all requested
> material pertaining to the pieces in your collection
> and have everything necessary to consider these works
> for inclusion in the catalogue raisonne" (Exhibit J,
> annexed to the Thome Affidavit).

However, all of the critical indicia of a binding and

enforceable agreement are lacking from Thome's allegations,

namely an offer and acceptance, mutual assent, an intent to be

bound by material terms, and consideration (*Express Indus. and

Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589,

*rearg denied* 93 NY2d 1042 [1999]).

Moreover, acceptance on the part of the offeror must be

unequivocal in order to effectively create a contract (2

Williston on Contracts, § 6:10).  Rather than constituting an

acceptance by the Foundation, the only obligation expressed in

the Foundation's postcard was to consider Thome's material, for

the purpose of determining whether the material would be

accepted.  In other words, by submitting materials to the

Foundation and requesting authentication, Thome merely placed an

"order" with the Foundation.

The mere acknowledgment that an order will be given

attention will not, standing alone, constitute an acceptance,

because it does not imply any promise to comply with the terms of

the order (*Van Keuren v Boomer & Boschert Press Co.*, 143 AD 785,

787 [3d Dept 1911]).  Consequently, the Foundation's postcard

acknowledging receipt of the materials and a pledge to consider

them did not constitute an acceptance.

Nonetheless, the same acknowledgment, coupled with other circumstances not present here, including parties' course of dealing or justifiable reliance, may result in a finding that the acknowledgment did constitute an acceptance (*see e.g.* Restatement [Second] of Contracts § 57, Illustration 2).

Beyond the Foundation's equivocal reply acknowledging receipt of the materials and pledging consideration of them, Thome does not allege any other facts, circumstances, or conduct that demonstrate an intent to create a contract for the purpose of authentication.  Thome alleges that he relied upon statements that defendant Rower made in 1997.  Rower allegedly stated how the Foundation intended to characterize the Set in the Catalogue, and indicated that the Set was an authentic Calder.

However, in order to find justifiable reliance to support a promissory estoppel theory, the plaintiff must allege a clear and unambiguous promise on the part of the defendant (*Emigrant Bank v UBS Real Estate Sec., Inc.,* _ AD3d_, 2008 WL 668968, *2 [1st Dept 2008]), an element that is conspicuously lacking from Thome's allegations.  Thome does not allege that Rower or the Foundation ever promised to authenticate the Set or issue a Catalogue number.  Therefore, Thome failed to sufficiently state a cause of action for breach of contract based upon a theory of promissory estoppel.

In any event, the cause of action for breach of contract, based upon allegations of breach occurring in 1998, is time-

barred by the six-year statute of limitations (CPLR § 213 [2]).

In the cause of action for conflict of interest, Thome alleges that the defendants are all conflicted vis-a-vis the Foundation, because they have a monopoly over the market for Calders. Additionally, Thome alleges that the defendants are seeking to manipulate the market by disparaging the Set, in order to permit them to purchase it at a reduced price. Thome cites to section 340 of the Donnelly Act, in support of his cause of action.

The Donnelly Act provides that monopolistic conduct in business, trade or commerce may be declared void (Donnelly Act, § 340). Further, section five of the Act states that an action maintained under the Act must be commenced within four years after the claim accrued (*id.*).

Thome alleges that the monopolistic conduct that caused him harm was the manipulation of the market and disparagement of the Set, by the Foundation's failure to authenticate it and issue it a Catalogue number. According to Thome, this conduct occurred in 1997. Because more than four-years have passed since the allegedly wrongful conduct, the claim is time-barred.

In support of the cause of action for tortious interference with prospective economic relations, Thome alleges that he lost two potential purchasers who were ready, willing and able to purchase the Set, due to the Foundation's willful failure to authenticate the Set and issue it a Catalogue number.

To state a valid cause of action for tortious interference

7

with prospective economic relations, a plaintiff must plead that the defendant used "wrongful means" to disrupt the prospective business relationship, or was motivated solely by malice (*Carvel Corp. v Noonan*, 3 NY3d 182, 190 [2004]). "Wrongful means" include actions that amount to a crime or an independent tort, including physical violence, fraud or misrepresentation, or civil suits (*id.* at 191).

Thome's allegations that the Foundation's actions were "willful, wanton and egregious" are conclusory and made without any factual support. Mere conclusory allegations of wrongful conduct are insufficient to state a valid claim for tortious interference with prospective economic relations (*Bank Leumi Trust Co. of New York v Samalot/Edge Assocs.*, 202 AD2d 282, 283 [1st Dept 1994]).

Further, Thome's allegation that the Foundation was motivated solely by malice is undermined by his allegation elsewhere that the Foundation sought to manipulate the market and disparage the Set, in order to obtain the Set from Thome at a reduced price (Thome's Memo. of Law, 12). The Foundation's alleged motivation by economic benefits necessarily defeats any contention that it was motivated solely by malice (*see Shared Communications Servs. of ESR, Inc. v Goldman Sachs & Co.*, 23 AD3d 162, 163 [1st Dept 2005]). Therefore, Thome fails to sufficiently plead a cause of action for tortious interference with prospective economic relations.

In his sixth cause of action, Thome alleges that, as

8

officers and trustees of a not-for-profit corporation organized
under the N-PCL, that the individual defendants owed the
Foundation, and Thome, individually, a fiduciary duty.  Thome
alleges that the defendants violated that duty by failing to
authenticate the Set, refusing to evaluate the Set despite their
knowledge that Thome would lose the potential to sell it, and
their own conflict of interest.

The fiduciary duties of care, loyalty and obedience that
govern the conduct of not-for-profit boards and their individual
members toward the organization that they serve is well-
established and documented (*see generally Consumers Union of
U.S., Inc. v State,* 5 NY3d 327, 370-71 [2005]; N-PCL § 717 [a]).
Nonetheless, the business judgment rule bars judicial inquiry
into the actions of corporate directors taken in good faith, and
in the exercise of honest judgment in the furtherance of
corporate purposes (*id.; Higgins v New York Stock Exchange, Inc.,*
10 Misc 3d 257, 278 [Sup Crt, NY County, Ramos, J.]).  Therefore,
absent a demonstration of bad faith in the form of self-dealing,
fraud, or unconscionability, a court's review of a board's
decision is limited (*id.*).  Thome has not alleged facts of bad
faith sufficient to permit the Court to review the board's
actions.

Furthermore, Thome has not alleged facts from which it can
be inferred that defendants owed him, individually, a fiduciary
duty, as opposed to the Foundation (*see Continental Cas. Co. V
AON Risk Servs. Cos., Inc.,* _ AD3d _, 2008 WL 895944, *1 [1st

9

Dept 2008]).

In any event, the statute of limitations for a cause of action for breach of fiduciary duty is six years from the alleged breach, and consequently, Thome's claim is time-barred (*Westchester Religious Inst. v Kamerman*, 262 AD2d 131, 131 [1st Dept 1999]).

Thome's seventh cause of action for civil conspiracy, is dismissed. New York does not recognize an independent cause of action for civil conspiracy (*Zachariou v Manios*, _ AD3d _, 2008 WL 852000, *1 [1st Dept 2008]). A plaintiff may plead conspiracy in order to connect the actions of the individual defendants with an underlying tort and to establish that these acts stem from an underlying scheme (*American Preferred Prescription, Inc. v Health Mgt., Inc.*, 252 AD2d 414, 416 [1st Dept 1998]). However, Thome has not sufficiently alleged the existence of an underlying actionable tort.

The elements of product disparagement are an intentional communication to a third person of a false statement denigrating the quality of goods, resulting in direct financial loss to the party whose interest is disparaged, in addition to malice and special damages (*Gucci America, Inc. v Duty Free Apparel, Ltd.*, 277 F Supp 2d 269, 275-76 [SD NY 2003]).

Thome contends that the defendants' refusal to authenticate the Set amounts to a positive statement that the Set is not an authentic Calder, and constitutes disparagement of the Set. However, Thome fails to plead that the defendants made a

communication to a third person regarding the Set. Rather, the basis of Thome's complaint is that the Foundation has been silent in reference to the Set. Further, Thome's allegations of malice are conclusory, and given without any factual support. In any event, the action is time-barred (CPLR 215 [3]).

Additionally, Thome seeks a declaratory judgment that the Set is an authentic Calder, and a mandatory injunction, compelling the defendants to place the Set in the Catalogue and to issue a Catalogue number.

Thome has failed to allege the existence of a live, justiciable controversy between himself and the Foundation or other defendants that would entitle him to a declaration, and ultimately, an injunction. Thome has failed to allege the existence of a duty, established either in contract, tort, or by statute, between himself and the Foundation, dedicated to the preservation of Calder's work and legacy, or the individual defendants as member of the Foundation's board, that would obligate the defendants to authenticate works alleged to be created by the artist, Calder. Thus, the issue of authenticity of the Set is not properly before the Court.

The case law cited by Thome where courts did render a finding as to authenticity are inapposite, because the issue of authenticity was directly before the court in the midst of a live, justiciable controversy (see e.g. *Greenberg Gallery, Inc. v Bauman*, 817 F Supp 167, DDC 1993], *affd* 36 F3d 127 [DC Cir 1994]). In an action coincidentally involving an alleged Calder

11

piece, purchasers of the item sought to rescind the contract of sale based upon fraud, breach of express warranty and mutual mistake of fact against the seller, after a purported leading Calder expert deemed it a forgery (*id.*). The court determined that, despite the testimony of the Calder expert to the contrary, the purchasers failed to establish that the piece was a forgery, because other evidence submitted established a "strong presumption" that the piece was created by Calder (*id.*).

Here, in contrast, Thome has not alleged the existence of an enforceable contract, or otherwise, any relationship giving rise to an affirmative duty on the part of the Foundation or individual defendants to authenticate the Set, such that the failure of the defendants to issue a Catalogue number resulted in a legally cognizable injury. In any event, defendants have not affirmatively rejected or otherwise questioned the authenticity of the Set, but have declined in the interim to issue a Catalogue number.

Therefore, in the absence of allegations of facts sufficient to demonstrate the existence of a duty on the part of the defendants to authenticate an alleged Calder work, any ruling by the Court as to the Set's authenticity, or an order compelling defendants to that effect, would constitute an impermissible advisory opinion (*Cuomo v Long Island Lighting Co.*, 71 NY2d 349, 354 [1988]).

Finally, the Court denies Thome's cross-motion to convert defendants' motion to one for summary judgment, and declines to

12

grant leave to replead, in light of Thome's failure to adequately state cognizable causes of action, and his failure to demonstrate a good ground for the assertion of additional causes of action (CPLR 3211 [e]; *Dweck v Oppenheimer & Co.*, 30 AD3d 163 [1st Dept 2006]).

Accordingly, it is

ORDERED that the motion to dismiss the complaint by defendants The Alexander & Louisa Calder Foundation, Alexander S.C. Rower, Mary Calder Rower, Sandra Calder Davidson, and Shaun Davidson is granted and the complaint is dismissed with costs and disbursements to defendants as taxed by the Clerk of the Court; and it is further

ORDERED that the cross-motion to convert the motion to summary judgment is denied; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

Dated: April 17, 2008

ENTER:

_____

J.S.C.



CHARLES E. RAMOS

13