Gary D. Sesser
Ronald D. Spencer
Judith M. Wallace
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York  10005
(212) 732-3200
*Attorneys for Defendants Archivio Alighiero Boetti,*
*Agata Boetti, Matteo Boetti and Annemarie Sauzeau*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

| | | |
|---|---|---|
| SPERONE WESTWATER INC. and | : | Index No. 08 CV 03263 (RJH) |
| SPERONE WESTWATER GALLERY, LLC, | : | (THK) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| - against - | : | |
| | : | |
| ARCHIVIO ALIGHIERO BOETTI, AGATA | : | |
| BOETTI, MATTEO BOETTI and | : | |
| ANNEMARIE SAUZEAU, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------ X

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

6332983.9

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

FACTS ....................................................................................................................... 2

Alighiero Boetti and the Archivio Alighiero Boetti ............................................... 2

The 2002 Sperone Westwater Gallery Exhibit and the Disputed Artwork ............ 3

Milan Action .......................................................................................................... 5

New York Action .................................................................................................... 7

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ............................................................................................................. 8

POINT ONE

  PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED
  FOR LACK OF SUBJECT MATTER JURISDICTION ...................................... 8

A.   Plaintiffs' Claims for Declaratory Judgment Are Not Ripe ............................... 8

  1.   Plaintiffs' Claims for Declaratory Judgment Are Not Ripe Under Article III ........... 8

  2.   Plaintiffs' Claims for Declaratory Judgment Are Not Prudentially Ripe ................ 11

B.   Plaintiffs Fail to State a Claim Arising Under Federal Law ............................... 14

POINT TWO

  DISMISSAL IS APPROPRIATE UNDER THE
  DOCTRINES OF *FORUM NON CONVENIENS* AND ABSTENTION ............................ 15

A.   Dismissal is Warranted Under the Doctrine of *Forum Non Conveniens* ......................... 15

B.   Dismissal is Warranted Under the Doctrine of Abstention ............................... 18

  1.   Abstention is Appropriate under *Wilton v. Seven Falls Co.* ....................................... 18

    a.   Declaratory Judgment Would Not Clarify or Settle the Legal Issues or
         Finalize the Controversy ......................................................................................... 19

    b.   A Declaratory Judgment Would Produce Friction
         Between Sovereign Legal Systems ...................................................................... 20

  2.   Foreign Abstention is Appropriate under the *Colorado River* Standard .................. 20

  3.   This Court Should Decline to Exercise Supplemental Jurisdiction ......................... 21

POINT THREE

  PLAINTIFFS FAIL TO STATE A CAUSE
  OF ACTION WITH RESPECT TO *I SEI SENSI* ...................................................... 22

A.   Plaintiffs' Claims Regarding *I Sei Sensi* Are Not Ripe ................................... 23

B.    Plaintiffs Lack Standing to Raise Claims Regarding *I Sei Sensi* ...................................... 24

C.    Plaintiffs Are Not in Privity of Contract with Defendants ................................................ 24

D.    Plaintiffs' Attempt to Create a Warranty Must be Dismissed as a Matter of Law ........... 24

E.    Plaintiffs' Breach of Good Faith and Fair Dealing and Negligent Misrepresentation
      Claims are Duplicative ...................................................................................................... 25

F.    Plaintiffs Fail to State a Cause of Action for Negligent Misrepresentation .................... 26

POINT FOUR

      PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION
      WITH RESPECT TO OTHER WORKS OWNED BY CARDI ......................................... 26

A.    Plaintiffs' Claims Regarding Other Works Owned by Cardi Are Not Ripe.................... 27

B.    Plaintiffs Lack Standing to Raise Claims Regarding Other Works Owned by Cardi ...... 27

C.    Plaintiffs Fail to State a Cause of Action for Negligent Misrepresentation .................... 27

D.    Plaintiffs Fail to State a Cause of Action for Interference With Business Relations ....... 29

POINT FIVE

      THIS COURT LACKS DIVERSITY JURISDICTION ...................................................... 30

A.    Plaintiffs Fail to Allege Damages in the Jurisdictional Amount ...................................... 30

B.    Plaintiffs Fail to Join Indispensable Parties Whose Joinder as Plaintiffs would Defeat
      Diversity Jurisdiction ........................................................................................................ 31

      1.    Cardi and the Cardi Gallery Are Indispensable Parties............................................. 31

      2.    Joinder of Cardi and the Cardi Gallery as Plaintiffs Would Defeat Diversity
            Jurisdiction ............................................................................................................... 32

POINT SIX

      PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION AGAINST
      THE INDIVIDUAL DEFENDANTS FOR TORT AND CONTRACT CLAIMS............... 32

POINT SEVEN

      THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS ................ 33

A.    Personal Jurisdiction Over the Defendants Is Not Warranted Under the New York
      Long-Arm Statute ............................................................................................................. 33

B.    Personal Jurisdiction Over the Defendants Does Not Comport With Due Process.......... 35

CONCLUSION................................................................................................................................ 35

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott Labs v. Gardner,* 387 U.S. 136 (1967) ................................................................12

*ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..................7, 29

*Am. Dredging Co. v. Miller*, 510 U.S. 443 (1994) ..........................................................15

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101 (2d Cir. 1998) ...............21

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir.
    2002) ...............................................................................................................33, 35

*Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333 (N.D. Ill. 1996), *aff'd* 132 F.3d 36
    (7th Cir. 1997) ...........................................................................................................10

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .....................................................7, 8

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) ....................................................................8

*Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir. 1969) .........................18

*Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880 (S.D.N.Y. 1991) .....20, 21

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ...........................6

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .........18, 21

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................................7

*County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52 (2d Cir. 1984) ...................24

*DeWeerth v. Baldinger*, 836 F.2d 103 (2d Cir. 1987), *on remand*, 804 F. Supp.
    539 (S.D.N.Y. 1992), *rev'd on other grounds*, 38 F.3d 1266 (2d Cir. 1994) ...............2

*Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*,
    346 F.3d 357 (2d Cir. 2003) .............................................................................. *passim*

*Dutchess/Putnam Rest. & Tavern Ass'n, Inc. v. Putnam County Dep't of Health*,
    178 F. Supp. 2d 396 (S.D.N.Y 2001) ........................................................................22

*E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44 (2d Cir. 2006) ....................9

*Ehrenfeld v. Mahfouz*, 489 F.3d 542 (2d. Cir. 2007) .....................................................13

-iii-

*Election Computer Servs., Inc. v. Aristotle Publ'g, Inc.*, No. 96-CV-6947, 1997 U.S. Dist. LEXIS 11327 (S.D.N.Y. Aug. 4, 1997) ................................................10, 23

*First Nat'l Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ...............................23

*Flast v. Cohen,* 392 U.S. 83 (1968) ...........................................................................24, 27

*Fontanella v. Am. Bd. of Internal Med.*, 421 F.2d 355 (2d Cir. 1970) ...........................34

*Gilliam v. Am. Broad. Co.*, 538 F.2d 14 (2d Cir. 1976).....................................................16

*Goldstein v. Pataki*, 516 U.S. 50 (2007).......................................................................8, 29

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ................................................................15

*Jota v. Texaco, Inc.*, 157 F.3d 153 (2d Cir. 1998) .............................................................32

*Leather Form S.R.L. v. Knoll, Inc.*, 205 Fed. Appx. 861 (2d Cir. 2006) ..........................19

*Lewis v. Odell*, 503 F.2d 445 (2d Cir. 1974).....................................................................32

*Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908)...........................................14

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)................................................9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ....................33

*Nwachukwu v. Chem. Bank*, No. 96 CV 5118, 1997 WL 441941 (S.D.N.Y. Aug. 6, 1997) .........................................................................................................31

*In re New York Trap Rock Corp.*, 160 B.R. 876 (S.D.N.Y. 1993), *aff'd in part, vacated in part,* 42 F.3d 747 (2d Cir. 1994) ............................................................22

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Secs. Corp.*, No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) .......................32

*Optimum Worldwide Ltd. v. Klebener,* No. 95 Civ. 1359, 1996 WL 71500 (S.D.N.Y. Feb. 16, 1996) ...........................................................................................34

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)............................................................15

*Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952)...................................14

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) .............................................................29

6332983.9

*Ross v. Bank of Am., N.A.*, 524 F.3d 217 (2d Cir. 2008) ............................................24, 27

*Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574 (1999)....................................................31, 32

*Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007) ..............16

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)........................................14

*Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568 (1985)....................................9

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781 (2d Cir. 1994) ...................30

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) .............................................................18

*Worldwide Volkswagen v. Woodson*, 444 U.S. 286 (1980) .........................................33, 35

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199
    (9th Cir. 2006) ...................................................................................... *passim*

## STATE CASES

*Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 441 N.Y.S.2d 644
    (1981) ................................................................................................25, 26, 28

*Castillo v. Tyson*, 268 A.D.2d 236, 701 N.Y.S.2d 423 (1st Dep't 2000)..........................29

*Greschler v. Greschler*, 51 N.Y.2d 368 (1980) ..........................................................12, 19

*Lariviere v. Thaw*, Index. No. 100627/99, 2000 WL 33965732 (Sup. Ct. N.Y.
    County June 26, 2000) ......................................................................................3

*Milau Assocs. v. N. Ave. Dev. Corp.*, 42 N.Y.2d 482, 398 N.Y.S.2d 882 (1977).............25

*Mobil Oil Corp. v. Joshi*, 609 N.Y.S.2d 214 (1st Dep't 1994)..........................................29

*Rosenblatt & Co. v. Davidge Data Sys.*, 295 A.D.2d 168, 743 N.Y.S.2d 471 (1st
    Dep't 2002)......................................................................................................25

*Seltzer v. Morton*, 154 P.3d 561 (Mont. 2007) .................................................................26

*Thome v. Alexander & Louisa Calder Found.*, No. 600823/07 (Sup. Ct. N.Y.
    County Apr. 17, 2008) .................................................................................28, 29

*Whitmore v. Whitmore*, 8 A.D.3d 371, 778 N.Y.S.2d 73 (2d Dep't 2004) ........................28

## FEDERAL STATUTES, RULES, & CONSTITUTION

17 U.S.C. § 106A .................................................................................................2, 7

28 U.S.C. § 1332 ....................................................................................................30

28 U.S.C. § 1367(a) ...............................................................................................21

28 U.S.C. § 1782 ....................................................................................................17

28 U.S.C. § 2201(a) .............................................................................................9, 18

Fed. R. Civ. P. 8(a) ................................................................................................32

Fed. R. Civ. P. 12(b) ...............................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................................8

Fed. R.Civ. P. 12(b)(7) ..........................................................................................31

Fed. R. Civ. P. 19(b) ..........................................................................................31, 32

U.S. Const. Art. III, § 2 ...........................................................................................9

## STATE STATUTES

CPLR § 302(a) .....................................................................................................33, 34

N.Y. U.C.C. § 2-725 ..............................................................................................25

N.Y. U.C.C. § 2-313 ..............................................................................................25

## MISCELLANEOUS

Paul Goldstein, III GOLDSTEIN ON COPYRIGHT § 17.23 (3d ed. 2007) ................................1

Hague Evidence Convention, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444.........17

Randy Kennedy, *Scientist Presents Case Against Possible Pollocks,* N.Y. Times,
    Nov. 29, 2007, at B3 ...........................................................................................26

Cyrill P. Rigamonti, *Deconstructing Moral Rights*, 47 Harv. Int'l L.J. 353, 369
    (2006)...................................................................................................................16

6332983.9

Defendants Archivio Alighiero Boetti, Agata Boetti, Matteo Boetti and Annemarie Sauzeau (collectively "Defendants") submit this memorandum in support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b).

## INTRODUCTION

This dispute concerns the authenticity of works of art, purportedly by the late Italian artist Alighiero Boetti (1940-1994) ("Boetti"); the alleged review of those works by the Archivio Alighiero Boetti (the "Archivio"), a non-profit association located in Rome, Italy; and an effort to force the Archivio to list those works as authentic in a scholarly reference work it is preparing. Under Italian law, as in many European countries, an artist, or the heirs of an artist (such as Defendants), have the right to prevent that artist's name from being associated with a work that the artist did not create. These rights, along with other rights, are known as the *droit moral. See* Barenghi Decl. ¶ 18.[1]

The works at issue in this dispute were exhibited or offered for sale by plaintiffs Sperone Westwater Inc. and Sperone Westwater Gallery LLC (collectively, "Plaintiffs"), on behalf of Italian collector and gallery owner Renato Cardi ("Cardi"), owner of the Galleria Cardi (the "Cardi Gallery") in Milan, Italy. After Defendants allegedly raised questions about the authenticity of some of those works, Plaintiffs and Cardi wrote to Defendants in April 2006 and threatened to sue if Defendants expressed negative opinions about certain works, or if those works were not included in a scholarly publication the Archivio is preparing. *See* Barenghi Decl. ¶ 16; Compl. ¶ 2 (noting "threats of suit"). In January 2008, Defendants commenced an action against the Sperone Westwater Gallery, Cardi, and the Cardi Gallery in a specialized tribunal

---

[1] Declaration of Andrea Barenghi in Support of Defendants' Motion to Dismiss the Complaint, sworn to on July 1, 2008 (hereafter, "Barenghi Declaration"); *See also* Paul Goldstein, III GOLDSTEIN ON COPYRIGHT § 17.23 (3d ed. 2007) (defining moral rights).

with jurisdiction over intellectual property issues in Milan, Italy, where Cardi is resident and where the Cardi Gallery is located, seeking, among other things, a determination that the disputed works were not created by Boetti and that, under Article 21 of the Italian Constitution, Defendants have a right to express their opinions.  A hearing in the Italian proceeding is scheduled for October 28, 2008. Barenghi Decl. ¶ 24.

Plaintiffs filed this action in April 2008 (without joining Cardi or the Cardi Gallery), seeking a declaratory judgment that the Visual Artists' Rights Act, 17 U.S.C. § 106A, preempts Italian law on moral rights and asserting speculative tort and contract claims on the premise that Plaintiffs would be harmed *if* Defendants were to issue negative opinions.

## FACTS

### Alighiero Boetti and the Archivio Alighiero Boetti

The Archivio, located in Rome, Italy, is a non-profit association founded in 1995 dedicated to the study and verification of the work of Boetti.  Compl. ¶¶ 1, 4. The Archivio is also engaged in an effort to publish a multi-volume *catalogue raisonné* for Boetti's work.[2] Compl. ¶ 13.  Annemarie Sauzeau was the first wife of Boetti and is currently Director of the Executive Committee of the Archivio. Compl. ¶ 7.  Agata Boetti ("Agata") and  Matteo Boetti ("Matteo") are the children of Ms. Sauzeau and Boetti.  Compl. ¶¶ 5-6.  Agata is currently Chair of the Executive Committee of the Archivio and Matteo is currently a Member of the Executive Committee of the Archivio.  Ms. Sauzeau resides in Rome, Italy and Paris, France.  Compl. ¶¶ 5-6.  Matteo is a resident of Rome. Agata resides in Paris.  Sauzeau Decl. ¶ 5.[3]

---

[2] A *catalogue raisonné* is a comprehensive listing of an artist's known works. *DeWeerth v. Baldinger*, 836 F.2d 103, 112 (2d Cir. 1987), *on remand*, 804 F. Supp. 539 (S.D.N.Y. 1992), *rev'd on other grounds*, 38 F.3d 1266 (2d Cir. 1994) (defining catalogue raisonné).

[3] Declaration of Annemarie Sauzeau in Support of Defendants' Motion to Dismiss the Complaint, sworn to on July 1, 2008 (hereafter, "Sauzeau Declaration").

Similar organizations have been established, frequently by family members, for famous artists such as Alexander Calder, Jackson Pollock, Andy Warhol, Roy Lichtenstein, and Isamu Noguchi, to protect the artist's legacy and assure correct attribution of the artist's work.[4]  Such organizations serve the salutary purpose of preventing fakes and forgeries from being passed off as authentic works of the artist, thereby protecting the artistic legacy of the artist, the investment of owners of genuine works, and the integrity of the marketplace.

**The 2002 Sperone Westwater Gallery Exhibit and the Disputed Artwork**

This dispute relates principally to the authenticity of works consigned for sale by Cardi to the Sperone Westwater Gallery.[5]

The Sperone Westwater Gallery held an exhibit of Boetti works at the Sperone Westwater Gallery from January 10 to March 2, 2002 (the "Exhibition"). Compl. ¶ 14. Cardi provided ten works to the Exhibition and allegedly represented those works as "registered" with the Archivio as authentic works by Boetti.  Compl. ¶ 18.  The Complaint acknowledges that although Cardi mailed some documentation on some works to the Archivio in 2001 and requested opinions on those works, the Archivio did not issue any opinions at that time.  Compl. ¶ 19. In January 2002, the Sperone Westwater Gallery mailed a copy of the catalogue for the

---

[4] Such organizations have established authentication procedures.  *See Lariviere v. Thaw*, Index No. 100627/99, 2000 WL 33965732, *3 (Sup. Ct. N.Y. County June 26, 2000) (discussing Pollock-Krasner Authentication Board); Calder Foundation, http://www.calder.org (authentication service has examined 3600 works since 1993); Roy Lichtenstein Foundation, http://www.lichtensteinfoundation.org/frames.htm (which "hopes to assist the public in the confirmation of correct attribution and provenance of the artist's extensive oeuvre"); Noguchi Museum, http://www.noguchi.org/catalogue_raisonne.html (discussing authentication process); Andy Warhol Foundation for the Visual Arts, http://www.warholfoundation.org (same).

[5] The works at issue in this dispute were executed in a ballpoint pen on paper or "biro" technique.  It should be noted that Boetti sometimes used the same title for multiple works, including some of the works at issue in this dispute.  Sauzeau Aff., ¶ 9.

-3-

Exhibition (the "Catalogue")[6] to the Archivio in Rome, and the Archivio immediately expressed concern about the authenticity of one work, *Aerei*, a "biro" work supplied by Cardi. Compl. ¶ 20. That work was sent to Rome for review by the Archivio, where the Archivio found that that work was not attributable to Boetti. Compl. ¶ 20. Plaintiffs allege that Defendants thereby implicitly authenticated the remaining works from Cardi in the Catalogue. *See* Compl. ¶ 70.

Plaintiffs had obtained permission to reprint an essay by Ms. Sauzeau on Boetti and his "biro" technique in the Catalogue. Compl. ¶ 16. Ms. Sauzeau allegedly picked up her $300 payment at Plaintiffs' gallery during the Exhibition. Compl. ¶ 16. Plaintiffs rely on that visit as a *de facto* authentication of all works in the Exhibition, apparently on behalf of all Defendants, although there is no allegation that Ms. Sauzeau (1) held any official position at the Archivio at that time, (2) reviewed the works in the Exhibition before agreeing to allow her essay to be used, or (3) agreed to opine on authenticity of the works in the Exhibition. *See* Compl. ¶ 70.

As noted above, the Archivio is preparing a *catalogue raisonné*, which involves research and review of artworks being considered for inclusion. Compl. ¶ 13. At times, upon request, the Archivio reviews works for an opinion about attribution. Compl. ¶ 13. The Complaint alleges that between 2004 and 2008, the Archivio raised questions about several "biro" works that Cardi had supplied to the Exhibition: *Unozero*, *Alighiero e Boetti*, *Salezucchero*, and *AELLEIGIACCAIERREOEBIOETITII*. Compl. ¶ 25-32. Plaintiffs refunded $29,227.50 to the purchaser of *Salezucchero*, the only damages specified in the Complaint. Compl. ¶ 29, 77.

Finally, Plaintiffs raise claims related to a work, entitled *I Sei Sensi*, that was not among those in the 2002 Exhibition or Catalogue.[7] Compl. ¶ 22. In 2004, Plaintiffs offered *I Sei Sensi* for sale and the prospective purchaser allegedly insisted upon a certificate of authenticity from

---

[6] The Catalogue is annexed as Exhibit 2 to Barenghi Decl., Exh. A.

[7] A different "biro" work also entitled *I Sei Sensi* was included in the Catalogue. Compl. ¶ 22.

the Archivio as a condition of purchase.  Compl. ¶ 24.  Plaintiffs allege that they "arranged for" a representative of the Archivio to review that work at the collector's New York residence and that the Archivio subsequently issued a certificate of authenticity.  Compl. ¶ 24.  Later, however, in March 2006, the Archivio asked to re-examine *I Sei Sensi*, although it has never done so. Compl. ¶ 24.  Plaintiffs assert a claim that if it turns out that *I Sei Sensi* is not authentic, the Archivio must have been negligent in issuing its initial certificate.  Compl. ¶¶ 63-66.

In or about April 2006, the Archivio received letters from Sperone Westwater Gallery threatening legal action if *I Sei Sensi*  or any of the works in the Catalogue were omitted from the *catalogue raisonné* that the Archivio is preparing.  *See* Barenghi Decl. ¶ 16;  Compl. ¶¶ 2, 34.

In the Complaint, the Sperone Westwater Gallery has taken the position that if the Archivio issues a negative opinion about any of the works Cardi consigned to Plaintiffs, Defendants are liable for the purchase price of any such work as damages.  *See, e.g.,* Compl. ¶ 77 (noting $29,227.50 refunded to the purchaser of *Salezucchero*).   It also has threatened legal action against the Archivio for damages, including damage to reputation, if any of the works supplied to Plaintiffs by Cardi are omitted from the *catalogue raisonné* being prepared by the Archivio or if any of the Defendants *ever* express the opinion that any of the works supplied to Plaintiffs by Cardi were not created by Boetti. Compl. ¶ 33.

**Milan Action**

In January 2008, the Archivio, Ms. Sauzeau, Agata and Matteo filed an action against Cardi, resident of Milan; the Cardi Gallery, located in Milan; and Plaintiffs in a specialized intellectual property tribunal (the "Milan Action").  A hearing is scheduled for October 28, 2008. Compl. ¶ 2.   Plaintiffs rely on the Writ of Summons in the Milan Action for the assertion that a declaratory judgment is warranted in this dispute, and make various representations about the content of that document. Compl. ¶¶ 35, 43-45.  This Court may take judicial notice of the full

-5-

contents of the Writ of Summons, which is annexed to the declaration of Professor Andrea Barenghi, counsel for Defendants in the Milan Action, and is very briefly summarized below.[8]

Because Plaintiffs threatened litigation if Defendants ever expressed a negative opinion about any works supplied by Cardi, the Milan Action seeks to resolve the key issue by seeking a judgment of the authenticity of those works.  Compl. ¶ 2. The Milan Action also seeks a judgment that Defendants have rights under Italian law to express opinions about the authenticity of Boetti works, and seeks to prohibit attribution of inauthentic works to Boetti.  Barenghi Decl. ¶ 12.   In total, the Milan Action makes eight demands: (1) a judgment that four works included in the Exhibition (*Aerei, Unozero, Salezucchero,* and *AELLEIGIACCAIERREOEBIOETITII*) cannot be attributed to Boetti; (2) an assessment of whether the remaining works supplied by Cardi to the Exhibition can be attributed to Boetti; (3) injunctions barring (a) Sperone Westwater Gallery from further distribution of the Catalogue and (b) Cardi Gallery and Cardi from exhibiting, selling, or displaying works that do not appear to be attributable to Boetti; (4) damages and indemnification of Agata and Matteo Boetti for the exhibition, sale, and reproduction of inauthentic works; (5) a declaration that the publication of Ms. Sauzeau's article in the Catalogue violated her property rights and *droit moral* and enjoining further distribution of the Catalogue; (6) damages to Ms. Sauzeau; (7) a declaration that the Milan plaintiffs were not guilty of various torts alleged by the Sperone Westwater Gallery, the Cardi Gallery, and Cardi; and (8) costs and attorney's fees. Barenghi Decl. ¶ 19.

---

[8] In a motion to dismiss, a court may consider documents incorporated by reference in the pleadings or relied upon in bringing suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

**New York Action**

On April 1, 2008, Plaintiffs filed the Complaint in this action seeking (1) in counts one through three, declaratory judgments that the moral rights of Defendants in Boetti's works and Ms. Sauzeau's essay are preempted and time-barred by the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A; (2) in counts four and five, damages for breach of implied covenant of good faith and fair dealing under New York law for asking to reexamine *I Sei Sensi*; that Defendants should be "estopped from denying, retracting, or otherwise casting doubt" on that opinion; and damages for negligent misrepresentation; and (3) in count six, with respect to the other works supplied by Cardi to the Exhibition, damages for negligent misrepresentation for not informing the Gallery in 2002 about doubts about *AELLEIGIACCAIERREOEBIOETITII* that the Archivio had allegedly expressed to Christie's in 2001 and that "the Defendants should be estopped from denying, disputing, or casting aspersions on the authenticity of the works submitted to them in 2001 for authentication"; and (4) in count seven, damages for interference with business relations for "misrepresenting" works supplied by Cardi to the Exhibition as not created by Boetti, in the amount of refunds and lost business, such as the $29,227.50 refunded to the purchaser of *Salezucchero*. *See* Compl. p. 1, ¶¶ 38-77.

## LEGAL STANDARD

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) if the plaintiff fails to "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 165 (2007) (hereafter, *"Twombly"*). The Second Circuit has held that the "plausibility standard" articulated in *Twombly*, replacing the now "disavowed" "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41 (1957), is not limited to antitrust cases. *See ATSI Commc'ns.*, 493 F.3d at 98 n.2

(dismissing securities fraud action); *see also Goldstein v. Pataki,* 516 F.3d 50, 56-57 (2007) (dismissing challenge to exercise of eminent domain).   A court must accept the factual allegations of the complaint and draw *reasonable* inferences in favor of the plaintiff.  *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (emphasis supplied). However, when the allegations in a complaint, however true, *cannot* raise a claim of entitlement to relief above the speculative level, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.  *Twombly*, 127 S.Ct. at 1966.

# ARGUMENT

## POINT ONE

### PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs' claims for declaratory relief, in counts one through three of the Complaint, fail to state causes of action over which this Court has subject matter jurisdiction, because they are not ripe for adjudication and do not present a justiciable case or controversy.  In addition, because Plaintiffs raise a federal statute only as a potential defense to future enforcement of a possible judgment in a pending action in Italy, Plaintiffs fail to state a claim "arising under" federal law.  Rather, the declaratory judgment causes of action appear to be for the sole purpose of obtaining federal jurisdiction over premature non-federal law claims that do not meet the requirements for diversity jurisdiction.

**A.    Plaintiffs' Claims for Declaratory Judgment Are Not Ripe**

**1.    Plaintiffs' Claims for Declaratory Judgment Are Not Ripe Under Article III**

Plaintiffs' actions do not set forth a case or controversy that is ripe under Article III, a requirement for federal jurisdiction that is also incorporated into the Declaratory Judgment Act.

-8-

Under Article III, "[t]he federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions law." *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 46-47 (2d Cir. 2006) (citing U.S. Const. Art. III, § 2). A "case or controversy" exists when there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.* 312 U.S. 270, 273 (1941). The "case or controversy" requirement is incorporated into the Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction . . . [a federal court] may declare the rights and other legal relations of any interested party seeking such declaration." *See Dow Jones & Co. v. Harrods, Ltd.,* 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 2201(a)), *aff'd,* 346 F.3d 357 (2d Cir. 2003).

Ripeness, one requirement for a justiciable "case or controversy" under Article III and the Declaratory Judgment Act, requires that a dispute involve an actual or threatened injury with direct and immediate impact, and the injury be sufficiently likely to occur, so that courts avoid resolving "contingencies that may or may not occur as expected or may not happen at all." 237 F. Supp. 2d at 407 n. 39 (citing *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)). Because Plaintiffs do not meet this standard, their claims are not justiciable under Article III and fail to state a cause of action under the Declaratory Judgment Act.

Plaintiffs' declaratory judgment claims request an advisory opinion about what might happen in the future if Defendants obtain an Italian judgment and seek to have it enforced in the United States. As noted above, the question of the authenticity of the disputed Cardi works is before the Milan tribunal. If and when the Milan tribunal determines the authenticity of those works, it will likely be irrelevant whether or not Defendants have rights under Italian law to

-9-

prevent Plaintiffs from offering or advertising those works as created by Boetti – if the Milan

tribunal finds the works not authentic, Plaintiffs would find it untenable to advertise them as by

Boetti, at least without full disclosure of the Milan tribunal's finding.  It is also possible that the

Milan tribunal could find those works to be created by Boetti, rendering Plaintiffs' concerns

moot.  Essentially, Plaintiffs ask this Court to declare that all other possible causes of action in

the U.S. and Italy relating to rights in visual arts *as well as* rights related to works *not* covered by

VARA (*i.e.,* Ms. Sauzeau's essay) are preempted by VARA because this dispute relates to visual

art attribution.  As one court described a similar dispute, this action:

> [S]eeks to have the court declare a future foreign judgment invalid and
> unenforceable even before [the declaratory judgment defendant] has the
> opportunity to have the future judgment entered by the [foreign] court and
> confirmed in a United States federal court.  Put another way, [the] act of filing the
> instant Complaint is an attempt to render null and void a possible future [foreign]
> judgment, a judgment which may never come to pass.

*Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1337 (N.D. Ill. 1996) (internal citation omitted),

*aff'd* 132 F.3d 36 (7th Cir. 1997); *see also Election Computer Servs., Inc. v. Aristotle Publ'g,*

*Inc.,* No. 96-CV-6947, 1997 U.S. Dist. Lexis 11327, at *5-6 (S.D.N.Y. Aug. 4, 1997) ("The

possibility of future litigation alone [was] not sufficient to establish an actual controversy

necessary for declaratory relief.")  For the same reasons, because there is only a possibility of a

future enforcement action in the United States, this claim is not ripe under Article III.

In *Dow Jones,* 346 F.3d 357, 359-60 (2d Cir. 2003), the Second Circuit confirmed that a

similar request for a declaratory judgment designed to cut short foreign litigation was not ripe.

Dow Jones had been threatened with a libel suit in the United Kingdom, and sought a declaration

in this Court that an article published in the Wall Street Journal about London-based retailer

Harrods was not libelous and that any libel judgment would be unenforceable anywhere in the

world on First Amendment grounds.  237 F. Supp. at 402-03.  Harrods thereafter filed its U.K.

libel action and moved to dismiss Dow Jones' declaratory judgment action in New York. *Id.*
The district court found that the declaratory judgment action was not ripe because it did not
involve an "actual controversy," explaining:

> [T]he mere prospect that such a ruling may be rendered at some indefinite point in
> the future [does not] raise[ ] a sufficient actual controversy within the meaning of
> the DJA. The Court does not find enough immediacy and reality in Dow Jones'
> claim at this early stage of the London Action to warrant declaratory relief. In
> essence, Dow Jones' complaint is grounded on a string of apprehensions and
> conjectures about future possibilities: that the court in the London Action will find
> a basis to assert jurisdiction and will recognize the pleading of a sufficient claim;
> that an adverse ruling on the merits may be rendered against Dow Jones; that the
> adjudication may award Harrods compensatory damages or enjoin Dow Jones
> from publishing the April 5 Article; that Dow Jones may seek to enforce such
> judgment in the United States or elsewhere; that if enforcement is sought, the
> judgment will be recognized somewhere. At this juncture, however, these
> protestations and prospects amount to nothing more than what they still are:
> premature concerns about contingencies that may or may not come to pass.

*Id.* at 408.   Like the dispute in *Dow Jones*, Plaintiffs' requests for declaratory relief are
"premature concerns about contingencies that may or may not come to pass."   *Id.* at 408.
Plaintiffs threatened litigation in April *2006*.  If Plaintiffs had suffered actual harm, they would
not have *waited two years* to file suit, until after a case had been brought in Italy.

### 2.    Plaintiffs' Claims for Declaratory Judgment Are Not Prudentially Ripe

Plaintiffs' claims also are not prudentially ripe.  A recent *en banc* Ninth Circuit decision
addressed this issue.  In *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 433 F.3d
1199, 1202 (9th Cir. 2006), Internet provider Yahoo! was sued in France by two French
organizations (La Ligue Contre le Racisme et L'Antisemitisme (LICRA) and L'Union des
Etudiants Juifs de France (UEJF)).   Interim decisions by the French court required Yahoo to
remove access from French territory to auctions of Nazi artifacts and to content relating to
Nazism and Holocaust deniers, subject to a penalty of 100,000 Euros per day. *Id.* at 1202-03.
Yahoo! did not appeal the French order but instead sought a declaratory judgment that the

-11-

interim orders by the French court were unrecognizable and unenforceable in the United States on First Amendment grounds. *Id.* at 1204-05. That dispute failed the test for prudential ripeness assessing: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Yahoo!*, 433 F.3d at 1212 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)).

The *Yahoo!* court found that the issues were not fit for a judicial decision, and "[a]s currently framed . . . comes perilously close to a request for a forbidden advisory opinion" because foreign judgments are generally enforceable even if the foreign law differs substantially from U.S law, unless enforcement is "repugnant" to public policy in the state in which enforcement is sought. *Yahoo!*, 433 F.3d at 1223 (9th Cir. 2006); *see Greschler v. Greschler*, 51 N.Y.2d 368, 377 (1980) (stating repugnancy standard). With the French lawsuit in its current state, it was impossible to tell if the repugnancy standard would be met, and whether Yahoo!, which had made some efforts to comply, was still in violation, or whether, as a factual matter, Yahoo! could comply with any orders without implicating First Amendment issues.

Here, Plaintiffs' request for a declaration on the relationship between a U.S. statute and Italian law is a question not fit for judicial determination because it would at most establish one possible defense to *potential* enforcement in the United States of a *possible* future judgment in the pending Italian proceeding. *See* Compl. ¶ 40. Furthermore, as in *Yahoo!*, Plaintiffs are effectively asking this Court not only to find that U.S. law differs from Italian law, but that an unknown, future Italian judgment would be "repugnant" to New York law.[9]

---

[9] Foreign judgments from countries with legal systems that respect due process of law are typically enforceable in the United States as a matter of international comity unless enforcement of the foreign judgment would be repugnant to the public policy of the state in which enforcement is sought. If there is a determination in Italy that certain works are not attributable to Boetti, a judgment prohibiting advertising those works as created by Boetti probably would

The Second Circuit's application of *Yahoo!* in *Ehrenfeld v. Mahfouz,* 489 F.3d 542, 547 (2d. Cir. 2007), is instructive.  In *Ehrenfeld*, the Second Circuit held that an action seeking a declaratory judgment that a default judgment in an English libel suit was unenforceable was distinguishable from *Yahoo!*, and was ripe for adjudication, because the English judgment was a final order and because there was no suggestion that the declaratory judgment plaintiff had instituted a policy under which she would be in compliance with the English order.  *Id.* at 547. As noted above, there is no final order in this case.  There is not even an interim order, as there was in *Yahoo!*. It is also possible that there will not be any need for an enforcement action.  The Complaint states that Plaintiffs refunded the approximately $29,227.50 purchase price for *Salezucchero* and returned that work to Cardi even though Plaintiffs did not necessarily agree with the Archivio's opinion.  *See* Compl. ¶ 29, 77.  This indicates that Plaintiffs may voluntarily comply with any judicial determination in the Milan Action.

With respect to the "hardship" prong of the prudential ripeness test, the Ninth Circuit in *Yahoo!* held that there would be no hardship because it was "exceedingly unlikely" any monetary penalty could be enforced in California or any other state court because of the general rule against enforcing penal judgments of other nations, and because the French order did not on its face require Yahoo to restrict access by Internet users in the United States.  *Yahoo!*, 433 F.3d at 1218-1221.  In this case, there is no hardship here because it is not known how the Milan tribunal will rule on various artworks, and because Plaintiffs can make its arguments about VARA in the Milan Action and upon any future enforcement effort in the United States.  In contrast, there would be considerable hardship to the Defendants in litigating the declaratory judgment issues (and the non-federal claims that would not otherwise warrant federal jurisdiction) in this Court,

---

not meet the "repugnancy" standard, but that question is entirely speculative without knowing the contours of the potential foreign judgment.

and being subjected to costly pre-trial discovery, while the key issue of the authenticity of the artworks is before the Italian tribunal.

**B.    Plaintiffs Fail to State a Claim Arising Under Federal Law**

Plaintiffs do not state a claim arising under federal law because Plaintiffs assert a federal law, VARA, as a potential *defense* to potential claims arising from Defendants' *droit moral*. *See* Compl. ¶ 38-49. Plaintiffs allege that "[t]he Gallery is entitled to the protection of United States law *for its activities*." Compl. ¶ 39 (emphasis supplied). Plaintiffs seek protection from potential damages claims through VARA. *See* Compl. ¶¶ 44, 49. This fails to give rise to federal jurisdiction because "[i]f the cause of action, which the *declaratory defendant* threatens to assert, does not *itself involve a claim under federal law*, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim." *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242 (1952) (emphasis supplied); *see Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672-73 (1950) (no federal question jurisdiction over declaratory judgment request because the federal issue, whether a proper certificate had been issued by the Federal Power Commission, arose solely in anticipation of a federal law defense to a potential breach of contract claim); *Dow Jones,* 237 F. Supp.2d at 425-26, *aff'd,* 346 F.3d 357 (2d Cir. 2003). This mirrors the well-pleaded complaint rule, which precludes removal unless the complaint establishes that the case arises under federal law. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 153-54 (1908).

There is no allegation that *Defendants* threaten to assert any rights under federal law, and thus there is no federal jurisdiction over these claims. Rather, through the threat of expensive and time-consuming discovery and litigation in New York, the Complaint is patently aimed at intimidating a foreign non-profit institution against future expressions of opinion about the works supplied to Plaintiffs by Cardi.

6332983.9

## POINT TWO

### DISMISSAL IS APPROPRIATE UNDER THE
### DOCTRINES OF *FORUM NON CONVENIENS* AND ABSTENTION

**A.    Dismissal is Warranted Under the Doctrine of *Forum Non Conveniens***

This case should be dismissed under the doctrine of *forum non conveniens* because this dispute could be adjudicated adequately and more conveniently in the Italian courts, and because litigation in New York would involve "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The Milan tribunal specializing in intellectual property issues clearly is an adequate forum, and the balance of relevant private and public interest factors favor dismissal of the Complaint. In fact, the Milan Action will provide a forum to remedy a key business concern identified by *Plaintiffs*, which is the need for an opinion on all the works supplied by Cardi, because Defendants have asked the Milan tribunal for a determination on this issue. *See* Compl. ¶ 37.

On this issue, courts weigh private interest factors such as ease of access to sources of proof, the relative availability of compulsory process to secure the attendance of unwilling witnesses, the cost of obtaining attendance of witnesses, the enforceability of judgments, the defendants' ability to implead a necessary third party, the cost of obtaining or translating evidence, and the plaintiff's financial hardship incurred by having the action in the alternative forum, and public interest factors such as judicial economy, local interest in having localized controversies decided in the home forum, the imposition of jury duty on the citizens of a forum that is unrelated to the subject of the litigation, the interest in having a case tried in a forum familiar with the relevant law, and avoidance of unnecessary problems in conflicts of law or the application of foreign law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

-15-

Plaintiffs imply that there is something untoward about Defendants' filing of the Milan Action, characterizing it as "classic . . . anticipatory litigation" in a "remote and inconvenient forum" under "inapplicable Italian law."  Compl. ¶ 34.   Italy is a valid forum choice for an Italian organization in a dispute involving Italian parties, in a forum where they have standing to sue and seek a decision on authenticity. It would hardly make sense for Defendants to initiate legal action in a jurisdiction where they allegedly have no standing.[10]  In fact, it does not appear that *either* Plaintiffs or Defendants have standing in federal court to litigate the authenticity of artwork that neither party owns.  *See* Points III.B and IV.B, *infra*. Plaintiffs can hardly object to Defendants' reliance on Italian law if the premise of Plaintiffs' declaratory judgment action is that Defendants have no substantive rights under U.S. law. *See* Compl. ¶¶ 44, 49.

The U.S. Supreme Court recently evaluated *forum non conveniens* dismissal in a case where foreign parties were already involved in litigation overseas.  *See Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007).  Sinochem had sued Malaysia International Shipping in a Chinese admiralty court and was successful in having Malaysia International's ship seized, apparently in China, and held for security. *Id.* at 1188.  The Supreme Court found the fact that the prospect of expensive jurisdictional discovery in the U.S. weighed in favor of *forum non conveniens* dismissal. *Id.* at 1194.  Here, as in *Sinochem*, there is an alternative forum and an action pending abroad, in Italy, and Defendants contest personal jurisdiction.  *Id.* at 1189; Point Seven, *infra*.

---

[10] *Compare Gilliam v. Am. Broad. Co.*, 538 F.2d 14, 26 (2d Cir. 1976) (Gurfein, J., concurring, and noting that "[t]he Copyright Act provides no recognition of the so-called droit moral, or moral rights of authors. Nor are such rights recognized in the field of copyright law in the United States" but noting that contract duties may apply) *with* Cyrill P. Rigamonti, *Deconstructing Moral Rights*, 47 Harv. Int'l L.J. 353, 369 (2006) (noting that in civil law countries, moral rights can confer standing to sue).

Dismissal is appropriate because a key figure in this dispute, Cardi, who is at the very least a critical witness regarding his communications with Defendants and Plaintiffs concerning authenticity issues, and the Cardi Gallery, are located in Milan. Italy is a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Evidence Convention").[11] Under the Hague Evidence Convention, even voluntary depositions of Italian or third country nationals require the permission of the Italian Court of Appeals with jurisdiction over the deponent.[12] If non-parties such as Cardi do not volunteer to be deposed, testimony is compelled through the Italian courts with questions administered by an Italian magistrate.[13] It may be difficult, if not impossible, to subpoena documents from non-parties such as Cardi, as the Italian Central Authority has informed the Hague Conference for Private International Law that "[t]he Italian Government declares, in accordance with Article 23, that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries."[14]

Because the Archivio, and most of its employees and officers, are located in Italy, some of those individuals may not speak English, and because the Archivio's records are largely in Italian, the parties could incur substantial costs in translating documents and obtaining the testimony of even willing witnesses. *See* Sauzeau Decl. ¶ 6, 7, 11. There is a localized interest

---

[11] *See* Hague Evidence Convention, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, *available at* http://www.hcch.net; Italy Judicial Assistance, U.S. State Department, *at* http://travel.state.gov/law/info/judicial/judicial_653.html.

[12] *See* Hague Evidence Convention art. 16.

[13] *See* Hague Evidence Convention art. 18; Declarations by Italy for the Hague Evidence Convention, Hague Conference on Private International Law, Decl. 2, *at* http://www.hcch.net/index_en.php?act=status.comment&csid=504&disp=resdn.

[14] Declarations by Italy for the Hague Evidence Convention, Decl. 3. *See* Italy Judicial Assistance, U.S. State Department web site; Hague Evidence Convention art. 23. By way of contrast, if the Sperone Westwater Gallery needs discovery for the Milan action, it may obtain such discovery in the United States pursuant to 28 U.S.C. § 1782.

in having this dispute tried in Italy because Plaintiffs' challenge is not limited to the disputed artworks but also challenges the legitimacy this Italian organization's operations, opinions, and efforts to prepare a *catalogue raisonné*.  *See* Compl. ¶ 13.  Although Plaintiffs are incorporated or organized under New York law, litigation in Italy is not necessarily equally burdensome for Plaintiffs, because the Complaint admits that one of the principals of the Sperone Westwater Gallery is Gian Enzo Sperone, who knew Boetti personally, and arranged exhibitions of Boetti's work in Turin, Italy.  Compl. ¶ 11.  Mr. Sperone may well have significant connections to Italy. Finally, judicial economy is served by dismissal because Plaintiffs' claims consist of speculative assertions of harm it might or might not experience in the future.

**B.      Dismissal is Warranted Under the Doctrine of Abstention**

This Court also has the authority to abstain from issuing declaratory judgments because that remedy would not serve a useful purpose or finalize the controversy.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  Dismissal or a stay of Plaintiffs' entire lawsuit due to the pending foreign litigation is also warranted because this is an "exceptional case" satisfying the test of *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976).

**1.      Abstention is Appropriate under *Wilton v. Seven Falls Co.***

In *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), the Supreme Court held the Declaratory Judgment Act confers "unique and substantial discretion" to courts deciding whether to declare the rights of litigants.  In *Dow Jones*, discussed *supra*, at Point I, the Second Circuit noted that federal courts possess such discretion because the Declaratory Judgment Act, 28 U.S.C. 2201(a), provides only that a court "may" declare the rights and legal relations of interested parties.  The Second Circuit set forth the following factors:

> Many years ago, this Court articulated a simple test that asks (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. See *Broadview*

-18-

*Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969). Other circuits have built upon this test, to ask also: (1) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy.

346 F.3d at 359-60.  For the reasons set forth below, this Court in its discretion should abstain from deciding Plaintiffs' declaratory judgment claims.

> **a.    Declaratory Judgment Would Not Clarify or Settle the Legal Issues or Finalize the Controversy**

In this case, a declaratory judgment would not serve a useful purpose in clarifying or settling the legal issues and would not serve to finalize the controversy.  In *Dow Jones*, the court found that the "application of the DJA, for a tactically preemptive purpose of declaring non-liability so as to guard against a tort action brought by a foreign national in a court of another country and arising under foreign law, is not within the contemplated purposes of the DJA."  237 F. Supp.2d at 427.  This is the very remedy sought by Plaintiffs.

The declaratory judgment sought by Plaintiffs would not clarify or settle the issues because the claims in Milan, at its core whether the works at issue were created by Boetti, arise under Italian law, involve Italian parties, and may not implicate VARA in any way.

Nor would identifying a conflict between U.S. law and Italian law finalize this controversy, because "foreign judgments are generally enforceable even if the foreign law differs substantially from state or federal law, unless enforcement is 'repugnant' to public policy in the state in which enforcement is sought."  *Yahoo!*, 433 F.3d at 1208 (9th Cir. 2006); *see Greschler*, 51 N.Y.2d at 377 (stating repugnancy standard).  As in *Yahoo!*, it is too soon to tell if that standard is met.

As the Second Circuit held in *Leather Form S.R.L. v. Knoll, Inc.*, 205 Fed. Appx. 861, 864 (2d Cir. 2006), the declaration of an American court that is merely "instructive" to a foreign

court does not finalize a controversy.  Here, the declaratory judgment would be advisory on a potential non-issue.  Essentially, Plaintiffs ask this Court to advise on the terms of a statute as a pretext to hale Defendants into federal court on a host of speculative tort claims for harms that have not been realized and may never come to pass.  This is hardly a compelling or appropriate case for this Court's exercise of discretion under the Declaratory Judgment Act.

> **b.    A Declaratory Judgment Would Produce Friction
> Between Sovereign Legal Systems**

As this Court noted in *Dow Jones,* the principle that it is "uneconomical as well as vexatious" for a court to issue a declaratory judgment where a suit not governed by federal law is pending in state court between the same parties "should be equally apt . . . where, as here, the alternate forum involved is a tribunal in a foreign nation and the declaratory defendants' asserted or threatened cause of action with which the federal litigation conflicts or duplicates arises under the laws of that country." *Dow Jones*, 237 F. Supp.2d at 426.  This Court noted that "[i]n response to one nation's tendency to overreach, it does not take long for the ill-effects to catch on, and for others to reciprocate, requiting sovereign indignity with indignity,"  and cautioned in favor of forebearance.  *Dow Jones*, 237 F. Supp.2d at 429.  This principle is particularly relevant where a declaratory judgment would amount to an advisory opinion unlikely to serve any valid purpose.   The "better and more effective remedy" is abstention.

> **2.    Foreign Abstention is Appropriate under the *Colorado River* Standard**

This Court also has the inherent power to dismiss or stay the entire action pending the resolution of a related foreign proceeding such as the Milan Action.   Such abstention is warranted because this is an "exceptional" case under the *Colorado River* standard.   *See, e.g., Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991) (dismissing federal action).  In the Southern District of New York:

> The relevant factors in determining whether to grant a stay or a dismissal because of litigation in an overseas forum include the similarity of parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, considerations of fairness to all parties and possible prejudice to any of them, and the temporal sequence of filing for each action.

*Caspian Invs.*, 770 F. Supp. at 884 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

In this case, abstention is warranted because, like the litigation in *Caspian Investors*, the foreign litigation was filed first.  *Caspian Invs.*, 770 F. Supp. at 884-85.  The court in *Caspian Investors* also noted that there is no indication any party would be prejudiced or treated unjustly in the foreign court.  *Caspian Invs.*, 770 F. Supp. at 885.  Similarly, there is no reason to expect any prejudice in the Milan intellectual property tribunal, especially since one of the principals of Plaintiffs' gallery is Gian Enzo Sperone, who likely has connections to Italy.  *See* Compl. ¶ 11.  As noted above, because Cardi is located in Milan and the key issue of authenticity is before that tribunal, the risk of piecemeal litigation is reduced by abstention, judicial efficiency is promoted, and the risk of inconsistent verdicts reduced.  Nor is there any prejudice to Plaintiffs if there is any delay in asserting their VARA defense, because they first threatened to sue in 2006 and only filed this action in response to Defendants' suit in Italy.

### 3.    This Court Should Decline to Exercise Supplemental Jurisdiction

This court should also decline to exercise supplemental jurisdiction over the non-federal claims in this action, because those claims are not "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a); *See* Compl. ¶9 (alleging supplemental jurisdiction).  The exercise of supplemental jurisdiction is left to the discretion of the court.  *See Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 105 (2d Cir. 1998).  Supplemental jurisdiction may be declined when:

-21-

(1) The claim raises a novel or complex issue of State law; (2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) The district court has dismissed all claims over which it has original jurisdiction; or (4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction. . . . The Court also has the discretion to exercise its supplemental jurisdiction over plaintiffs' state law claims for reasons related to judicial economy, convenience, fairness, and comity.

*Dutchess/Putnam Rest. & Tavern Ass'n, Inc. v. Putnam County Dep't of Health*, 178 F. Supp.2d 396, 399-400 (S.D.N.Y 2001) (internal citations omitted).

If this Court abstains from the declaratory judgment actions, this Court should decline supplemental jurisdiction. Judicial economy, convenience, fairness, and comity warrant declining supplemental jurisdiction when there is a foreign action pending in which all the key actors are parties and where the key issues will be decided. Finally, non-federal issues predominate. *See In re New York Trap Rock Corp.* 160 B.R. 876, 881-82 (S.D.N.Y. 1993), *aff'd in part, vacated in part,* 42 F.3d 747 (2d Cir. 1994) (dismissing pendent claims because novel and complex state and foreign law issues predominated and Argentina was primary location of disputed assets). Plaintiffs' declaratory judgment claims involve an abstract question of statutory interpretation, but if the non-federal claims go forward, they will require significant factual discovery regarding actions of the Archivio and Cardi in Italy and any review, exhibit, and sale of the disputed artworks. For these reasons, this Court should decline supplemental jurisdiction.

## POINT THREE

### PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION WITH RESPECT TO *I SEI SENSI*

Plaintiffs' claims of breach of implied covenant of good faith and fair dealing and negligent misrepresentation with respect to the review of a work entitled *I Sei Sensi*, in counts four and five of the Complaint, are not ripe and fail to state a cause of action because they seek a judgment that *if* the Archivio were to reverse its previous, positive opinion with respect to that

work of art, Plaintiffs *would* be injured.  Furthermore, Plaintiffs are not in privity of contract with Defendants; rather, this is an attempt to raise a baseless and time-barred warranty claim. Finally, counts four and five are duplicative.

**A.    Plaintiffs' Claims Regarding *I Sei Sensi* Are Not Ripe**

Plaintiffs' claims of breach of covenant of good faith and fair dealing claim and negligent misrepresentation are not ripe because there is no injury.  In *First Nat'l Bank v. Gelt Funding Corp.*,  27 F. 3d 763 (2d Cir. 1994), First National brought a Racketeer Influenced and Corrupt Organizations Act ("RICO") action alleging that Gelt Funding negligently misrepresented information pertaining to the operating income of certain properties in order to secure loans.  *Id.* at 766.  The Second Circuit held that such claims were not ripe because First National could not show injury.  *Id.* at 769.  To demonstrate injury under RICO, a loan foreclosure is required to fix the amount of damages and "[o]nly when [First National's] actual loss becomes clear and definite will the claims be ripe for suit." *Id*.  Plaintiffs' breach of covenant of good faith and fair dealing claim is not ripe because that claim is based on a letter from the Archivio asking to re-examine *I Sei Sensi.* That re-examination never took place, and Plaintiffs do not allege that their purchaser sought a refund or threatened to sue.  Here, as in *First National,* Plaintiff's injury is not "clear and definite." The possibility of a future conflict, alone, does not make this claim ripe. *See Election Computer Servs.,* 1997 U.S. Dist. Lexis 11327 at *5-6.

Plaintiffs' negligent misrepresentation claim alleges that if *I Sei Sensi* is not authentic, the only possible explanation is that the first review must have been negligent.  Compl. ¶ 66.  If the Milan tribunal reaches a different conclusion from the Archivio, that conclusion might well be based on testimony or evidence newly revealed in the Milan Action or new evaluation techniques.  It is plainly premature to litigate the issue of whether any such determination could only be explained by negligence in the initial examination.  These negligent misrepresentation

-23-

and breach of good faith and fair dealing claims rely on multiple contingencies which may never occur, constituting "an abstract tower of hypotheticals stacked like a house of cards on suppositions piled on top of speculations all founded on conjectures and contingent 'ifs', 'mays' and 'to the extents.'" *See Dow Jones*, 237 F. Supp. 2d at 417.

## B.    Plaintiffs Lack Standing to Raise Claims Regarding *I Sei Sensi*

Plaintiffs also lack standing for its claims regarding *I Sei Sensi*.  Like Article III ripeness, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit" and requires (1) an injury in fact that is distinct and palpable, (2) fairly traceable to the challenged action, and (3) likely redressable by a favorable decision. *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008) (quotations omitted). Because the Milan tribunal may determine that this work is by Boetti and Plaintiffs do not even allege that they have been asked for a refund, there is no palpable injury in fact to Plaintiffs.  Plaintiffs may not raise claims on behalf of the absent owner of the artwork who may or may not feel injured by the Archivio's request to re-examine that work.  *See Flast v. Cohen,* 392 U.S. 83, 99 n.20 (1968) ("a general standing limitation imposed by federal courts is that a litigant will ordinarily not be permitted to assert the rights of absent third parties").

## C.    Plaintiffs Are Not in Privity of Contract with Defendants

Even if such claims were ripe, Plaintiffs are not in privity of contract with Defendants, who therefore did not owe a duty of good faith and fair dealing to the Plaintiffs.  *See County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984).

## D.    Plaintiffs' Attempt to Create a Warranty Must be Dismissed as a Matter of Law

Plaintiffs essentially seek a warranty from Defendants, which under New York law cannot be implied from performance of a service, for which Plaintiffs paid no consideration, and which would be time-barred in any event.

-24-

New York does not recognize an implied warranty arising out of the performance of a service. *See Milau Assocs. v. N. Ave. Dev. Corp.*, 42 N.Y.2d 482, 487, 398 N.Y.S.2d 882, 885 (1977). Since the examination of artwork is a service, the Archivio's opinion was not a warranty of authenticity. Otherwise, experts could never review or appraise works of art without incurring substantial liability, and it would almost certainly be impossible to convince any disinterested expert to review a valuable work of art. Rather, any implied warranty flows from the *seller*. *See, e.g.,* N.Y. U.C.C. § 2-313.

Furthermore, the statute of limitations for warranty actions is four years. N.Y. U.C.C. § 2-725. That period begins to run from the date of sale or delivery of the item. *See Rosenblatt & Co. v. Davidge Data Sys.*, 295 A.D.2d 168, 743 N.Y.S.2d 471, 472 (1st Dep't 2002). The Complaint alleges that the Archivio issued a certificate of authenticity for *I Sei Sensi* on March 19, 2004. Compl. ¶ 24. Plaintiffs had sold the work in January 2004, allegedly subject to authentication by the Archivio. Compl. ¶ 23-24. Therefore, even if the Archivio's certificate of authenticity was a warranty, and the request to re-examine the work constituted a breach of that warranty, any action for breach is time-barred because the Complaint is dated April 1, 2008.

**E.    Plaintiffs' Breach of Good Faith and Fair Dealing and Negligent Misrepresentation Claims are Duplicative**

The tort claim in count five is duplicative of the contract claim in count four. A common law negligence claim must assert (1) a duty of care owed by defendant to plaintiff separate and apart from those duties owed by defendant under the contract; (2) defendant's breach of that duty; and (3) injury to the plaintiff as a result of the breach. *See Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648 (1981). Plaintiffs fail to assert any independent duty of care and therefore this cause of action is duplicative.

-25-

**F.      Plaintiffs Fail to State a Cause of Action for Negligent Misrepresentation**

For the same reasons noted *supra*, at Point III.E, Plaintiffs fail to state a cause of action for negligent misrepresentation.  As noted above, the first element of a common law negligence claim is a duty of care owed by defendant to plaintiff separate and apart from those duties owed by defendant under the contract. *See Akins*, 53 N.Y.2d at 333, 441 N.Y.S.2d at 648.  Plaintiffs allege a contract with the Archivio but do not allege any other duty owed to Plaintiffs, so the first required element of negligent misrepresentation is not met.  Compl.¶ 55-62.

**POINT FOUR**

**PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION
WITH RESPECT TO OTHER WORKS OWNED BY CARDI**

Plaintiffs seek to impose upon Defendants a duty to issue authenticity opinions, at no cost, upon demand, without any procedural requirements such as actual inspection of artwork pursuant to an agreement.  Plaintiffs also seek to require Defendants to indemnify them for their business risks so that they need not obtain warranties by contract from their sellers.  *See* Compl. ¶ 34 (stating that in 2007 Plaintiffs' attorneys repeated earlier threats to sue "for failing to issue opinions in timely and reasonable fashion").  However, Plaintiffs' allegations fail to transform their business challenge into a claim for negligent representation or interference with business relations.  Rather, through these contrived claims, Plaintiffs seek to bludgeon a nonprofit entity dedicated to preserving Boetti's legacy into including the Cardi works in its *catalogues raisonné* or abandoning that project altogether.  *See Seltzer v. Morton*, 154 P.3d 561, 609 (Mont. 2007) (lawsuit to coerce art expert to change authentication opinion amounted to "legal thuggery").[15]

---

[15] *See also* Randy Kennedy, *Scientist Presents Case Against Possible Pollocks,* N.Y. Times, Nov. 29, 2007, at B3 (reporting owner threatening litigation against an expert whose findings suggested artwork was not authentic).

Essentially, Plaintiffs seek a warranty of authenticity, unlimited in time, from the Archivio, a small non-profit that reviews works as a public service, even if the Archivio never formally examined the actual work or issued a formal written opinion. Plaintiffs would have been better served by seeking such protection by contract, or enforcing any rights it may have by contract, from Cardi or the Cardi Gallery, on whose behalf it sold the works of art.

**A.      Plaintiffs' Claims Regarding Other Works Owned by Cardi Are Not Ripe**

For the reasons stated *supra*, Point III.A, Plaintiffs' claims regarding other works owned by Cardi that have never been reviewed by Defendants are not ripe.  An evaluation of whether Defendants "misrepresented" works as not by Boetti likely require this Court to determine whether any of Defendants' statements were accurate – a determination that is premature while the issue of authenticity is before the Italian tribunal. *See* Compl. ¶ 76.  It is also premature to determine whether any possible future determination that any works are not authentic would necessarily mean that any alleged earlier opinion was a "negligent misrepresentation" when it is not known what the basis will be for any such determination by the Milan tribunal.

**B.      Plaintiffs Lack Standing to Raise Claims Regarding Other Works Owned by Cardi**

For the same reasons stated *supra*, at Point III.B, Plaintiffs have not alleged an injury in fact that confers standing by alleging fears of a possible future determination that those works were not created by Boetti, and that its customers may demand refunds.  Plaintiffs may not assert the rights of absent third party owners of works who may or may not feel injured by Defendants or wish to pursue this lawsuit.  *Flast,* 392 U.S. at 99 n.20; *Ross,* 524 F.3d at 222.

**C.      Plaintiffs Fail to State a Cause of Action for Negligent Misrepresentation**

Plaintiffs' sixth cause of action, for negligent misrepresentation, which alleges that a positive opinion with respect to "all the works submitted by Cardi in 2001" could be implied from Defendants' silence, fails to state a cause of action.  *See* Compl. ¶ 68.  Rather, Plaintiffs

seek an unconstitutional prior restraint against Defendants' future expression of opinions. *See* Compl. ¶ 72 ("The Defendants should be estopped from denying, disputing, or casting aspersions on the authenticity of the works submitted to them in 2001 for attribution").  Like the claims regarding *I Sei Sensi,* counts six and seven are a back-door effort to raise warranty claims.

As noted *supra* at Point III.F, the elements of a negligence claim are (1) a duty of care separate and apart from contract duties; (2) breach of that duty; and (3) injury. *See Akins*, 53 N.Y.2d at 333 (1981).  Plaintiffs' theory is that the Archivio had a duty to review documents mailed by Cardi and to issue an opinion on authenticity. Compl. ¶¶  68, 19.[16]  In *Thome v. Alexander & Louisa Calder Found.*, No. 600823/07, slip op. at 11 (Sup. Ct. N.Y. County Apr. 17, 2008),[17] the court squarely analyzed the issue of "whether a foundation dedicated to the preservation of an artist's work and legacy has a duty to the public to authenticate works alleged to be created by the artist" and found that it did not.  The court rejected the allegation that the Calder Foundation had made an open offer by inviting owners of Calder works to submit works for authentication and to be listed in the *catalogue raisonné*, and found that *all* the material elements of a contract – offer and acceptance, mutual assent, and consideration – were lacking. *Id.* at 1, 5, 11.  Here, as in *Thome*, an owner of artwork allegedly mailed documents and requested an opinion, but this did not give rise to any duty.  Nor is any consideration alleged in counts six and seven of the Complaint. *See Whitmore v. Whitmore*, 8 A.D.3d 371, 371-72, 778 N.Y.S.2d 73 (2d Dep't 2004) (postnuptial agreement not binding due to lack of consideration).

---

[16] The notion that the Archivio has a duty to issue opinions is at odds with the request for declaratory judgment that the Archivio has no right to prevent misattributions.  Plaintiffs' theory of implied authentication is at odds with the request for declaratory judgment that printing Ms. Sauzeau's essay was not an implied authentication on her behalf of any works. *See* Compl. ¶ 47.

[17] Annexed as Sesser Decl., Exh. A.

The Complaint also alleges that the Archivio had a duty to inform Plaintiffs, who did not own the works at issue, of doubts it had about the Cardi works, and asserts that Plaintiffs could rely on Ms. Sauzeau's visit to the Exhibition and the Archivio's receipt of the already-published Catalogue as an implicit authentication of Cardi's works.  Compl. ¶ 70.  Plaintiffs fail to allege an agreement with the Archivio that would support such reliance and "there can be no breach of warranty claim absent privity of contract between plaintiffs and defendants." *Castillo v. Tyson*, 268 A.D.2d 236, 701 N.Y.S.2d 423, 425 (1st Dep't 2000).  Plaintiffs cannot rely on silence unless Defendants had a duty to issue an opinion, and, under *Thome,* Defendants had no such duty. *See Mobil Oil Corp. v. Joshi*, 609 N.Y.S.2d 214, 215 (1st Dep't 1994) ("in the absence of a confidential or fiduciary relationship . . . imposing a duty to disclose, . . . mere silence, without some act which deceived . . . cannot constitute a concealment that is actionable as fraud."). Plaintiffs therefore fail to state a cause of action.[18]

**D.      Plaintiffs Fail to State a Cause of Action for Interference With Business Relations**

Plaintiffs' seventh cause of action for interference with business relations fails to state a cause of action.  A cause of action for tortious interference with a business relationship requires the plaintiff to demonstrate (1) business relations; (2) interference by the defendant; (3) a sole purpose to harm the plaintiff or use of dishonest, unfair, or improper means; and (4) injury as a result.  *Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir. 1994).  The Complaint fails to allege that Defendants' sole purpose was to injure Plaintiffs or the use of dishonest, unfair, or improper means.  *See Goldstein,* 516 F.3d at 56-57; *ATSI Commc'ns.*, 493 F.3d at 98 n.2.   Moreover, the

---

[18] If Plaintiffs are injured, such injury would be caused by misrepresentations by Cardi.  *See* Compl. ¶ 18.  Plaintiffs' assertion of reliance on silence is contradicted by allegations of familiarity with the Archivio's formal procedures.  Plaintiffs claim expertise in selling Boetti works, allege that Gian Enzo Sperone was invited to serve on the Archivio's authentication committee, and describe formal reviews of *I Sei Sensi* and *Aerei. See* Compl. ¶ 11, 20, 22.

-29-

conclusory theory that Defendants are involved in a scheme to limit authentications is contradicted by the allegation that the Archivio might have issued an unwarranted *positive* opinion, and that, if that positive opinion is in error, such an error would be explainable only by negligence.[19]  *See* Compl. ¶¶ 63-66.  Finally, Plaintiffs satisfy the fourth required element – an allegation of damages – with respect to only *one* work, *Salezucchero*.

## POINT FIVE

### THIS COURT LACKS DIVERSITY JURISDICTION

**A.    Plaintiffs Fail to Allege Damages in the Jurisdictional Amount**

If the declaratory judgment action is dismissed, this Court lacks subject matter jurisdiction because Plaintiffs fail to meet their burden to demonstrate a "reasonable probability" that their claim is in excess of $75,000, the minimum required for diversity jurisdiction, at the time the action is commenced. 28 U.S.C. § 1332. *See Tongook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).  It is a "legal certainty" that Plaintiffs do not meet this threshold because the Complaint is based on unripe claims of possible future injuries.  *See Tongook*, 14 F.3d at 786.  This is not a dispute in which the amount of damages is uncertain, but one in which it is uncertain whether there will be *any* harm at all.

The only actual damages that Plaintiffs reference is $29,227.50 refunded for *Salezucchero*.  Compl. ¶ 77.[20]  Even that amount is probably high, because Plaintiffs likely passed that cost along to their consignor, Cardi, the real party in interest.  Plaintiffs' losses are probably limited to their commission.  *See* Compl. ¶ 18, 23.  Plaintiffs allege "reputational and

---

[19] Despite the insinuation of market manipulation, Plaintiffs do not allege an antitrust cause of action, which, in any event, could never survive the scrutiny required by *Twombly*, 127 S. Ct. 1955.

[20] Plaintiffs' Rule 26(a) disclosures, dated May 27, 2008, also acknowledge that aside from the $29,227.50 amount "other damages to the Gallery are not currently calculable."

6332983.9

economic damages" but do not assert a cause of action for defamation. Compl. ¶ 60. Because Plaintiffs set forth unripe claims and claims that fail to state a cause of action, it is a legal certainty that Plaintiffs are not entitled to damages in the jurisdictional amount. Therefore this Court lacks diversity jurisdiction. *See Nwachukwu v. Chem. Bank*, No. 96 CV 5118, 1997 WL 441941, at *8 (S.D.N.Y. Aug. 6, 1997) (diversity jurisdiction lacking where five claims were dismissed and remaining claim did not satisfy the amount in controversy requirement).

**B.    Plaintiffs Fail to Join Indispensable Parties Whose Joinder as Plaintiffs would Defeat Diversity Jurisdiction**

Plaintiffs have failed to join indispensable parties, Cardi and the Cardi Gallery. Fed. R. Civ. P. 19(b). Accordingly, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(7). Moreover, if those parties were to be joined, their joinder as plaintiffs would defeat federal diversity jurisdiction. *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 580 n.2 (1999).

**1.    Cardi and the Cardi Gallery Are Indispensable Parties**

Rule 19(a) requires a party to be joined "if the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest." Cardi and the Cardi Gallery supplied the disputed artwork to Plaintiffs. Plaintiffs assert that they were entitled to rely on the statements or silence of the Defendants in response to documentation *Cardi* allegedly mailed to Defendants. *See* Compl. ¶ 19. This would likely require this Court to determine whether Defendants owed any duties to Cardi and the Cardi Gallery. A judgment on these issues and others could as a practical matter impair Cardi and the Cardi Gallery's ability to protect its interests, either in a United States court or in the Milan Action.

If joinder is not feasible, Rule 19(b) authorizes the Court to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be

-31-

dismissed, the absent person thus being regarded as indispensable." Fed. R. Civ. P. 19(b).  In

doing so, the Court is to consider "the extent to which, by protective provisions in the judgment,

by the shaping of relief, or other measures, the prejudice can be lessened or avoided." *Jota v.

Texaco, Inc.*, 157 F.3d 153, 162 (2d Cir. 1998) (quoting Fed. R. Civ. P. 19(b).

> ### 2.    Joinder of Cardi and the Cardi Gallery as Plaintiffs Would Defeat Diversity Jurisdiction

Under *Lewis v. Odell*, 503 F.2d 445, 447 (2d Cir. 1974), a court will realign the parties in

accordance with their interests.  If Cardi and the Cardi Gallery were to be joined, they would be

realigned as party plaintiffs in accordance with their interests, as described above.  Plaintiffs also

cite a $29,227.50 refund that was likely funded by Cardi, the consignor.  *See*  Compl. ¶¶ 29, 77.  If

Cardi and Cardi Gallery were to be joined, their presence would destroy the complete diversity

required for diversity jurisdiction.  *See Ruhrgas*, 526 U.S. at 580 n.2 (1999) (diversity

incomplete where defendant and one plaintiff were foreign).

**POINT SIX**

**PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION AGAINST
THE INDIVIDUAL DEFENDANTS FOR TORT AND CONTRACT CLAIMS**

Plaintiffs fail to state a claim against the individual defendants for the non-federal causes

of action, because the overly generalized group pleading fails to satisfy Federal Rule of Civil

Procedure 8(a).  *See Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette

Secs. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, at *6-7 (S.D.N.Y. Mar. 6, 2002).  Plaintiffs

allege that Ms. Sauzeau accepted $300 for her essay. Matteo is alleged to have written a letter to

Plaintiffs asking to re-examine *I Sei Sensi* and a letter to the Art Institute of Chicago regarding

*Alighiero e Boetti*.  *See* Compl. ¶¶ 26-27.  Agata is alleged to have joined in the Milan Action to

vindicate her rights. *See, e.g.,* Compl. ¶ 35.  Plaintiffs fail to allege wrongdoing by the individual

Defendants and therefore the claims against them as individuals should be dismissed.

-32-

6332983.9

## POINT SEVEN

## THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

The Complaint does not allege a statutory basis for personal jurisdiction over any of the Defendants.  Plaintiffs, who acknowledge that Defendants are located or domiciled in Europe, do not allege that any Defendants have continuous and systematic contacts with New York that support general jurisdiction.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Nor do the contacts alleged by Plaintiffs satisfy the requirements of the New York long-arm statute. *See*  CPLR § 302(a).

**A.**     **Personal Jurisdiction Is Not Warranted Under the New York Long-Arm Statute**

A court must determine (1) whether the claim asserted falls within the ambit of the state's long-arm statute and (2) whether under the Due Process Clause the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Worldwide Volkswagen v. Woodson,*  444 U.S. 286, 297 (1980); *see Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). The New York long-arm statute, CPLR § 302(a), authorizes personal jurisdiction "as to a cause of action arising from any of the acts enumerated in this section" when the defendant:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to the person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.

Plaintiffs allege that Ms. Sauzeau picked up her $300 payment for reprint permission and visited the Exhibition; that the Archivio examined *I Sei Sensi* in New York; and that Matteo wrote a letter on behalf of the Archivio asking to re-examine *I Sei Sensi*. Compl. ¶¶ 16, 24, 27. Such contacts do not support personal jurisdiction under CPLR § 302(a)(1), for transacting business within the state, or under CPLR § 302(a)(2), for a tort within the state. Even assuming that the review of *I Sei Sensi* in New York constituted "doing business" with Plaintiffs (which it clearly did not), that review did not give rise to any cause of action because, as noted above, Plaintiffs merely allege possible future harm. Therefore no claim arises from that contact.

The letter from Matteo regarding *I Sei Sensi* is analogous to a cease-and-desist letter, which does not subject the author to personal jurisdiction. *See Yahoo!,* 433 F.3d at 1208. The $300 to Ms. Sauzeau does not support personal jurisdiction for the declaratory judgment claim regarding that essay because "[i]f a defendant's only contact with the state is that payment is to be made here, it will not suffice to satisfy the transaction of business test under CPLR section 302(a)(1) sufficient to maintain jurisdiction." *Optimum Worldwide Ltd. v. Klebener,* No. 95 Civ. 1359, 1996 WL 71500, *3 (S.D.N.Y. Feb. 16, 1996). Nor do claims relating to the disputed artworks "arise from" that contact. *See Fontanella v. Am. Bd. of Internal Med.*, 421 F.2d 355, 359 (2d Cir. 1970) (no long-arm jurisdiction because claim did not arise from the transaction in New York). Plaintiffs allege "reputational" damages, but the long-arm statute does not cover defamation outside the state. *See* CPLR § 302(a)(3); Compl. ¶ 60. Finally, there is no basis for personal jurisdiction over alleged acts or omissions in Italy, because CPLR § 302(a)(3) applies only if defendants regularly do or solicit business or derive substantial revenue from goods consumed or services rendered in the state, derive substantial revenue from interstate or international commerce, or own or possess real property within the state, which are not alleged.

-34-

**B.      Personal Jurisdiction Over the Defendants Does Not Comport With Due Process**

The second prong of the analysis, due process, is not satisfied because none of the Defendants has the requisite "minimum contacts" with New York. Defendants did not purposefully avail themselves of the state's laws and protections and the exercise of personal jurisdiction would not be reasonable. *Bank Brussels*, 305 F.3d at 124, 129-30.

Plaintiffs allege two contacts related to *I Sei Sensi,* which was not included in the Exhibition. Such contacts do not constitute purposeful availment with respect to *other* works. By visiting Plaintiffs' gallery, Ms. Sauzeau did not avail herself of the protections of New York with respect to all artwork in the Exhibition. It would be unreasonable to find that her "conduct and connection with the forum State are such that [Defendants] should reasonably anticipate being haled into court there" for claims related to artwork that happened to be on the walls when she picked up a $300 check. *Worldwide Volkswagen,* 444 U.S. at 297.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Complaint must be dismissed, with costs awarded to Defendants.

Dated:  New York, New York
        July 14,  2008

CARTER LEDYARD & MILBURN LLP

By:   ___/s/ Gary D. Sesser_____
        Gary D. Sesser
        Ronald D. Spencer
        Judith M. Wallace
        2 Wall Street
        New York, New York  10005
        (212) 732-3200
        *Attorneys for Defendants Archivio Alighiero Boetti,*
        *Agata Boetti, Matteo Boetti and Annemarie Sauzeau*

-35-

6332983.9