Robert P. LoBue
Hugh J. Freund
Matthew B. Larsen
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
*Attorneys for Plaintiffs Sperone Westwater Inc. and*
*Sperone Westwater Gallery, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SPERONE WESTWATER INC. and SPERONE     :     No. 08 Civ. 3263 (RJH) (THK)
WESTWATER GALLERY, LLC,

                        Plaintiffs,     :

        - against -     :

ARCHIVIO ALIGHIERO BOETTI,     :
AGATA BOETTI, MATTEO BOETTI and
ANNEMARIE SAUZEAU,     :

                   Defendants.     :

-------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

THE PARTIES.....................................................................................................................2

BACKGROUND ..................................................................................................................3

I.     The Gallery's exhibition and sale of Boetti works..................................................3

II.    Defendants' pronouncements that previously unobjectionable works are fakes.................3

III.   Defendants' anticipatory Italian suit ......................................................................4

IV.   The Gallery's U.S. action .......................................................................................5

ARGUMENT ........................................................................................................................6

I.     DEFENDANTS HAVE NOT IDENTIFIED ANY UNDUE BURDEN IN
COMPLYING WITH THE GALLERY'S ONE DOCUMENT REQUEST .....................7

II.    STAYING DISCOVERY WOULD UNFAIRLY PREJUDICE THE GALLERY BY
DELAYING ADJUDICATION OF ITS CLAIMS UNDER U.S. LAW WHILE THE
ITALIAN SUIT PROCEEDS..........................................................................................11

III.   DEFENDANTS' ARGUMENTS FOR DISMISSAL DO NOT SUPPORT STAYING
DISCOVERY...................................................................................................................12

CONCLUSION..................................................................................................................14

1880591v.1

## **INTRODUCTION**

Plaintiffs Sperone Westwater Inc. and Sperone Westwater Gallery, LLC (collectively, the "Gallery") respectfully submit this brief opposing the motion of Archivio Alighiero Boetti, Agata Boetti, Matteo Boetti and Annemarie Sauzeau (collectively, "Defendants") to stay discovery.

There is nothing hypothetical about the Gallery's claims in this action. In 2002, the Gallery mounted an exhibition in New York City of works of the late Italian artist Alighiero Boetti ("Boetti"), published a catalogue of the exhibition (including an essay contributed by Defendant Sauzeau) in New York City, and sold many of the works in New York City, virtually all of them to U.S. collectors. Now, in 2008, six years after the events in question, and after years of on-again, off-again negotiations between the Gallery and the often dysfunctional Archivio, the Archivio has seen fit to sue the Gallery in Italy for, among other things, (1) a prior restraint to be issued by the Italian court prohibiting further distribution of the catalogue by the Gallery in New York, (2) damages under Italian law for the actions of the Gallery six years ago in New York, and (3) a defensive declaration that Defendants have a "free speech" defense against any damage claim that the Gallery might otherwise have against them. Although Defendants now intimate that the Italian court will be asked to make an assessment of the authenticity of the approximately 10 Boetti works in question, such an assessment would appear to be a physical impossibility for that Court, as the works are now hanging on the walls of private purchasers in the U.S. who are not parties to any action between the Gallery and Defendants.

The Gallery is a New York entity and all of its actions that are the ostensible subject of the Italian action took place in New York. The Gallery is governed by, and entitled to the protection of, New York and United States law. Faced with the spurious Italian lawsuit, the Gallery had a choice: either raise its dispositive U.S. law defenses in the Italian Court, or bring

1

this declaratory action here for a speedy determination of those defenses by a U.S. federal court, which will then act as res judicata in the Italian action both as to the propriety of applying U.S. law and the content of that law. The Gallery acted reasonably in bringing this action in this Court. Litigation in Italy takes years under the best of circumstances. The Italian Court has no familiarity with our Visual Artists Rights Act, 17 U.S.C. § 106A ("VARA"), which in important respects differs from what Defendants claim to be the Italian law of *droit moral*.

In short, Defendants are engaged in procedural gamesmanship designed to harass the Gallery with an untimely suit in a remote jurisdiction. The requested stay of discovery is of a piece with that litigation strategy, because Defendants have everything to gain by derailing this case so they can tell the Italian court that nothing of consequence is happening in this action. At present, the Gallery has only issued document requests, some of which are tailored to seek evidence pertinent to the personal-jurisdiction defense raised in the pending motion to dismiss, and the remainder of which, addressed to the merits, will elicit relevant evidence wherever the dispute is ultimately litigated. Defendants have made no showing that discovery will saddle them with "undue burden or expense." Fed. R. Civ. P. 26(c)(1). The motion to stay discovery should be denied.

## THE PARTIES

The Gallery is a prominent and highly reputed New York City art gallery that exhibits and sells works of noted modern artists. (Compl. ¶ 3) Defendant Annemarie Sauzeau is Boetti's first wife. Defendants Agata and Matteo Boetti are children of Sauzeau and Boetti. (Id. ¶ 13) After Boetti died in 1994, Sauzeau, Agata and Matteo Boetti created defendant Archivio Alighiero Boetti (the "Archivio"), which Defendants describe as a non-profit association located in Rome, Italy. (Memorandum of Law in Support of Defendants' Motion to Stay Discovery

2

("Defts' Br.") at 1)  The Gallery alleges that Defendants are jointly liable for the behavior of each given that the three individuals together control and act on behalf of the Archivio.

## BACKGROUND

### I.    The Gallery's exhibition and sale of Boetti works

In January 2002, the Gallery exhibited 15 Boetti works in New York and produced a catalogue, which was published and distributed in New York, of the works shown at that exhibition.  (Compl. ¶¶ 14-15)  Sauzeau permitted an essay she had written to be reprinted in the exhibition catalogue, and she collected her $300 payment in person when she visited the Gallery and viewed the exhibition.  (Id. ¶ 16)  Shortly after the exhibition opened, Defendants contacted the Gallery and expressed the concern that one of the 15 works on display, *Aerei*, was not an authentic Boetti.  The Gallery immediately sent *Aerei* to Rome for examination at the Archivio, which opined that the work was not authentic.  Without necessarily agreeing, the Gallery removed *Aerei* from the exhibition and subsequently sold 8 of the remaining 14 works, 7 of them to purchasers in the United States.  (Id. ¶¶ 20-21)

The Gallery also sold a Boetti work not shown in the exhibition, *I sei sensi*, for $250,000 in January 2004 to a New York collector.  The purchaser insisted on having a certificate of authenticity for the piece, so the Gallery contacted Defendants.  Defendants sent an agent, Mr. Andrea Marescalchi, to examine the work in New York in February 2004.  On March 19, 2004, the Archivio issued to the Gallery a certificate of authenticity for the work.  (Id. ¶¶ 22-24)  The Gallery delivered the certificate to the purchaser of the work.

### II.    Defendants' pronouncements that previously unobjectionable works are fakes

In May 2004, Defendants suddenly declared that *Unozero*, a work they viewed in 2002 alongside the questioned *Aerei* but said nothing about, was fake.  In 2006, Defendants impugned

1880591v.1

another Gallery-sold work about which they had said nothing earlier, *Alighiero e Boetti*, by

sending a letter to its purchaser questioning its authenticity.  Defendants similarly cast a cloud on

*I sei sensi* on March 31, 2006, when they asked the Gallery if they could reexamine the work in

light of alleged "episodes of counterfeited works."  This suggestion of fakery was tantamount to

tearing up the certificate of authenticity Defendants had issued for the work in 2004.  Also in

2006, Defendants announced that the previously unquestioned *Salezucchero* was a fake, and the

Gallery consequently refunded the purchaser.  Most recently, in January 2008, Defendants for

the first time informed the Gallery of its doubt concerning the authenticity of the Boetti work

*AELLEIGIACCAIEERREOEBIOETITII*— a doubt Defendants shared with Christie's auction

house in 2001 but concealed from the Gallery when viewing the work at the Gallery in 2002.

(Id. ¶¶ 25-30)  Defendants now purport to express concern that other Boetti works the Gallery

exhibited in 2002 could be fakes.  (Id. ¶¶ 31-32)

All these flip-flops naturally troubled the Gallery, which began corresponding with

Defendants in 2006 regarding their newfound doubts about already-reviewed works of art.

When those communications failed to resolve the situation, the Gallery enlisted counsel, who

corresponded with Defendants into 2007.  Throughout this time, the Gallery and Defendants

were in negotiations aimed at settling their differences.

### III.    **Defendants' anticipatory Italian suit**

In January 2008, Defendants initiated an action in the Tribunale Ordinario di Milano

against the Gallery and Renato Cardi ("Cardi"), an Italian gallery owner who had supplied 10 of

the 15 Boetti works shown in the 2002 exhibition.

Defendants' Italian suit principally seeks an injunction and damages for the alleged

violation of their "moral rights" that occurred when the Gallery exhibited and sold the works at

issue as Boettis.  Defendants say that at least four of those works – *Aerei*, *Unozero*, *Salezucchero* and *AELLEIGIACCAIEERREOEBIOETITII* – are fakes or of doubtful authenticity which, given the small number of works shown in the 2002 exhibit, allegedly puts other works in doubt.  Thus Agata and Matteo Boetti assert, on behalf of their deceased father, a violation of the moral right against misattribution to Boetti of works that he allegedly did not create.   Sauzeau claims that the Gallery additionally violated her moral rights by reprinting her essay in the exhibition catalogue, with her permission;  she says that the presence of her essay wrongfully put her imprimatur on a collection of questionable or phony works.  (Id. ¶¶ 34-35)

The Italian suit also seeks a declaration that Defendants' recently cast aspersions, directed at Gallery-sold works they previously authenticated explicitly or implicitly, generate no liability to the Gallery.  (Id. ¶ 36)  Finally, Defendants ask the Italian court to determine whether the 10 works that Cardi provided for the 2002 exhibition are genuine Boettis.  (Id. ¶ 37)  This request is surprising, because Defendants hold themselves out as the foremost experts on Boetti, and hopelessly unrealistic:  the Italian complaint does not even request a court expert to examine the works, which in any event are beyond that court's reach given that nearly all of them are in the hands of private U.S. collectors.[1]

### IV. The Gallery's U.S. action

The Gallery commenced this lawsuit on April 1, 2008, seeking principally a declaratory judgment that, pursuant to controlling U.S. law, the Gallery has not violated Defendants' moral rights.  The concept of moral rights, or "*droit moral*," has its origins in Europe, where it has existed for over 100 years.  The United States, on the other hand, enacted its first and so far only federal moral-rights statute in 1990.  That statute, the Visual Artists Rights Act of 1990, was

---

[1] The Gallery will provide more information on this point when it submits its opposition to Defendants' motion to dismiss the complaint.

added to the Copyright Act at 17 U.S.C. § 106A ("VARA") and took effect on June 1, 1991. (Compl. ¶¶ 40)  It preempts any equivalent state laws.  17 U.S.C. § 301(f)(1).

The Gallery asserts three causes of action for declaratory judgment pursuant to VARA. First, that Agata and Matteo Boetti have no actionable moral rights on behalf of their father because the pieces at issue here are not works that VARA protects after the death of the artist. (Id. ¶¶ 38-44)  Second, that Sauzeau has no moral rights with respect to her catalogue essay because VARA applies only to works of visual art.  (Id. ¶¶ 45-49)  Third, that Defendants have no actionable moral rights in any event because VARA imposes a three-year statute of limitations which already has expired in this case.  (Id. ¶¶ 50-54)  Each of these claims requires construction of VARA by this Court.

The Gallery also asserts state-law causes of action for damages based on Defendants' many reversals of opinion described above.  These claims are within this Court's supplemental and diversity jurisdiction.  (Id. ¶¶ 55-77)  The Gallery does not seek to restrain Defendants from "express[ing] their opinions."  (Defts' Br. at 2)  Rather, through its state-law claims the Gallery seeks compensation for Defendants' wrongful past <u>conduct</u>.

## ARGUMENT

Defendants bear the burden of demonstrating good cause for staying discovery, <u>see, e.g.</u>, <u>Howard v. Galesi</u>, 107 F.R.D. 348, 350 (S.D.N.Y. 1985), and "imposition of a stay is not appropriate simply on the basis that a motion to dismiss has been filed."  <u>In re Currency Conversion Fee Antitrust Litigation</u>, 2002 WL 88278 at *1 (S.D.N.Y. 2002).

In deciding whether good cause exists to stay discovery, a court should assess "the breadth of discovery and the burden of responding to it, as well as the unfair prejudice to the

party opposing the stay." Id. (citations omitted). Another factor to consider is the strength of any potentially dispositive motion. Id.

I.     **DEFENDANTS HAVE NOT IDENTIFIED ANY UNDUE BURDEN IN COMPLYING WITH THE GALLERY'S ONE DOCUMENT REQUEST**

The Gallery served the Defendants with a 25-item request for documents on May 16, 2008. A substantial number of the requests are addressed to whether this Court has personal jurisdiction over Defendants and are pursued only because Defendants have raised an objection to personal jurisdiction. See Plaintiff's First Request for Production of Documents, attached as EXHIBIT "A." The remaining requests plainly are relevant to the claims at issue in this case. For example, the Gallery has sought documents in Defendants' possession and control relevant to the chain of title to the questioned works, see id. ¶¶ 8-9, not only because such documents may prove decisive in litigating whatever issues of authenticity Defendants may raise, but also because under VARA the ownership of works, such as those here, on the effective date of the statute is dispositive with respect to whether a deceased artist's survivors may assert rights on the artist's behalf. See 17 U.S.C. § 106A(d).

These requests are limited, relevant and manageable, and Defendants have "made no factual showing that discovery here is any more burdensome than is typical in responding to discovery requests." Burka v. New York City Transit Authority, 110 F.R.D. 660, 668 (S.D.N.Y. 1986) (citation omitted). For example, if Defendants' allegation that the works are fake is based on some documentary evidence, they should have that evidence. If it is based on nothing more than their personal opinion, they will have no documents to produce.

Nor have Defendants demonstrated in their conclusory declarations that any burden of production would be "undue" within the meaning of Rule 26(c)(1). Defendants complain that they "are located in Italy and France, [and] the Archivio's records are mostly in Italian." (Defts.

7

Br. at 7) They don't explain, however, how being overseas makes document production unduly burdensome, especially when electronic records can be sent at no cost to their New York counsel, a major law firm experienced in managing document collection under U.S. procedure. There will be documents in English as well as Italian relevant to this case, and there will be some cost of translating them from one language to the other irrespective of where this case ends up. If some other obstacles based on geography and language exist, Defendants don't identify them. Cf. In re Vitamin C Antitrust Litigation, 237 F.R.D. 35, 37-38 (E.D.N.Y. 2006) ("[I]f discovery will prove to be difficult because our legal rules and culture are foreign to the [Chinese] defendants, that strikes me as all the more reason to make an early start. . . . I am confident that the talented attorneys representing the defendants in this case will likewise succeed in overcoming the language and cultural barriers they describe.").

Reference to Cardi and the Hague Evidence Convention also is a red herring. Whether getting discovery from him may prove difficult has nothing to do with Defendants' production of documents to the Gallery.

Similarly, Defendants allude to "tremendous opportunities for would-be plaintiffs to misuse the threat of litigation and discovery" (Defts' Br. at 7), and theorize that the Gallery's single document request is an abusive attempt "to deter Defendants from pursuing their lawsuit in Italy and publishing the Boetti *catalogue raisonné*." (Id. at 8) Unsurprisingly, Defendants make no attempt to explain how complying with the request will cause either of those things.

Very surprisingly, however, Defendants contend that "[e]ven discovery on the issue of personal jurisdiction should be stayed." (Id. at 9) One of their arguments for dismissal is their claim that this Court lacks personal jurisdiction over the them. But the Court's decision will be based on facts rather than Defendants' say-so. As Defendants concede, discovery is warranted

8

"where there is at least some slight factual indication that a basis for jurisdiction exists." (Id. at 10 (quoting Ronar, Inc. v. Wallace, 649 F.Supp. 310, 317-18 (S.D.N.Y. 1986)). See also Hachette Distribution, Inc. v. Hudson County News Co., Inc., 136 F.R.D. 356, 358 (E.D.N.Y. 1991) ("Discovery should be stayed [] only when there are no factual issues in need of further immediate exploration."); F. H. Krear & Co. v. 19 Named Trustees, 91 F.R.D. 497, 498 (S.D.N.Y. 1981) (denying discovery stay where defendant's summary-judgment argument was "not [] so strong as to preclude the usefulness of more discovery").

There undoubtedly is a "factual indication" of personal jurisdiction here. Sauzeau, the Director of the Archivio's Executive Committee, came to the Gallery in 2002 to view the exhibition and collect the $300 paid for permission to reprint her essay in the catalogue. (Compl. ¶ 16) Another agent of the Defendants, Mr. Marescalchi, was dispatched to New York in 2004 to perform the examination of *I sei sensi* which led to Defendants' issuing it a certificate of authenticity. (Id. ¶ 24) Defendant Matteo Boetti, on behalf of the Archivio, sent the letter to the Gallery in 2006 which effectively revoked that certificate. (Id. ¶ 27) And there are additional facts, which will be set forth in response to the motion to dismiss, that provide more than a "slight factual indication" that this Court has personal jurisdiction over Defendants. For one, Sauzeau sold a Boetti work, *Tutto*, through the Gallery in New York for $600,000. For another, Defendants maintain a website in which they invite New Yorkers and others to submit Boetti works for authentication or inclusion in the long-promised *catalogue raisonné*. See http://www.archivioalighieroboetti.it/about_us.asp. Defendants charge a fee for authentication, and if a New Yorker's purchase of *I sei sensi* for $250,000 is any indication, there is a definite market for Boettis in this state and discovery may confirm that Defendants derive substantial business from their dealings with it.

9

Defendants contend that the individual Defendants have insufficient contacts with the U.S. and New York in particular. Assessing that contention requires discovery. For example, the Gallery should be permitted to learn what contacts and activities the individual defendants have with New York and, given their communications that caused injury in New York, whether they derive substantial revenue from interstate or international commerce. See N.Y. Long-Arm Statute, CPLR § 302(a)(3). Moreover, the Gallery should be allowed to obtain evidence to support its contention that Defendants are subject to New York jurisdiction because they sent agents to do the work of the Archivio here.

The Archivio is a "non-profit association" consisting of the three individual defendants, each of whom is on the Executive Committee of the Archivio. (Decl. of Annemarie Sauzeau, July 1, 2008, ¶¶ 1, 4) Each of the individual Defendants is an agent of the others and of the Archivio itself with respect to Archivio business. The Archivio clearly sent agents, including Sauzeau and Marescalchi, to New York on the Archivio's business which lies at the heart of the dispute. Establishing long-arm jurisdiction through the acts of agents is well-established under New York law. See, e.g., Morgenthau v. A.J. Travis Ltd., 184 Misc.2d 835, 843, 708 N.Y.S.2d 827, 832 (Sup. Ct. N.Y. Cty. 2000) ("Under New York's long-arm statute, a court may exercise personal jurisdiction over a nondomiciliary who in person or through an agent commits a tortious act within the State. See CPLR 302(a)(2). . . . As co-participants in a tortious act committed in New York State, the defendants are properly subject to the State's long-arm jurisdiction."). See also Afloat in France, Inc. v. Bancroft Cruises Ltd., 2003 WL 22400213 at *5 (S.D.N.Y. 2003) ("Where a court has personal jurisdiction over a partnership, either because of the partnership's activities as a whole or the actions of a single partner acting on behalf of the partnership, the court has personal jurisdiction over all of the general partners. This is so because under New

10

York law, a partner is an agent of his fellow partners, as well as of the partnership.") (footnotes and citation omitted).

Based on the facts already known, there is a strong case for personal jurisdiction over each of the Defendants. Yet, because Defendants choose to contest jurisdiction, the Gallery should be permitted to fortify its position by obtaining discovery of jurisdictional facts. See EXHIBIT "A" ¶ 1. In any event, the question here is one of burden. And Defendants again omit any description of precisely how producing documents relevant to personal jurisdiction will unduly burden them. They raise claims of facing "particularly burdensome and intrusive" discovery (Defts' Br. at 9) without particularizing any actual undue burden. Such hyperbole simply will not do. See, e.g., Masi v. City of New York, 2003 WL 22434132 at *1 (S.D.N.Y. 2003) ("The stay of discovery sought by defendants is premised on a claim of undue burden. Defendants fail, however, to shoulder their burden of demonstrating how onerous such discovery would be."); Howard, 107 F.R.D. at 350 ("[T]he Document Request served upon the defendant is not burdensome or overreaching. The defendant does not argue that responding to this request will present any particular difficulties.") (footnote omitted).

In sum, none of Defendants' proffered reasons for staying discovery actually indicates how, why or even whether producing documents to the Gallery poses an undue burden.

## II. STAYING DISCOVERY WOULD UNFAIRLY PREJUDICE THE GALLERY BY DELAYING ADJUDICATION OF ITS CLAIMS UNDER U.S. LAW WHILE THE ITALIAN SUIT PROCEEDS

Defendants say that a discovery stay would not prejudice the Gallery because it threatened suit as early as 2006 but did not commence this action until 2008. What Defendants don't say, despite knowing full well, is that they and the Gallery were in negotiations until at least Fall 2007 in an effort to avoid litigation. A plaintiff's weighing its options and seeking to

resolve the dispute before initiating litigation does not demonstrate that a subsequent discovery stay would pose no prejudice. See e.g., Association Fe Y Allegria v. Republic of Ecuador, 1999 WL 147716 at *1 (S.D.N.Y. 1999) (A "stay of discovery would be prejudicial to the plaintiffs. Defendants assert that plaintiffs have waited more than eleven years since accrual of their claims to commence suit. The fact that plaintiffs' claimed losses are longstanding, rather than recent, does not, however, diminish the prejudice to plaintiffs of further delay.") (emphasis added).

The unfair prejudice posed to the Gallery by delaying this proceeding is clear: a cumbersome, distant and costly subjugation to foreign law or a foreign court's attempt to interpret U.S. and New York law – which will continue to constrain the Gallery from dealing in works like those Defendants have wrongly impugned – versus a speedy determination of U.S. law by a court qualified to do so.

## III.    DEFENDANTS' ARGUMENTS FOR DISMISSAL DO NOT SUPPORT STAYING DISCOVERY

The Gallery will respond fully to Defendants' motion to dismiss in its forthcoming opposition papers. For now, suffice it to say that it is not evident that Defendants' everything-but-the-kitchen-sink attack on the complaint truly has "substantial grounds" or does not lack a "foundation in law." In re Currency Conversion Fee Antitrust Litigation, 2002 WL 88278 at *1. At the very least, the jurisdictional arguments for dismissal are unpersuasive.

This Court undeniably has subject-matter jurisdiction over this dispute. It has federal-question jurisdiction pursuant to the Declaratory Judgment and Copyright Acts because Defendants have created a "case of actual controversy," 28 U.S.C. § 2201(a), by suing the Gallery in Italy for the alleged violation of moral rights, codified at 17 U.S.C. § 106A, which the Gallery asks this Court to declare were not violated. Defendants confusedly argue against jurisdiction "because no foreign judgment has been issued [and] Plaintiffs' claims . . . are

12

asserted as a defense to a potential future enforcement action in the U.S." (Defts' Br. at 6)  That

is wrong on both points.  First, the "actual controversy" between the Gallery and Defendants

already exists;  it does not depend on there being a "foreign judgment."  Second, the Gallery

wants a declaration of its rights under U.S. law in the here and now, not for use in a maybe-

someday enforcement action that likely will never come.

      As then-Judge Mukasey put it in words equally applicable here, "Defendants misinterpret

both the relief that plaintiff seeks and the proper standard for determining whether an actual

controversy exists.  Plaintiff does not seek an American court's advisory opinion . . . .  Rather, it

seeks a legally binding judgment that [U.S. law], and not [Italian law], applies, and that suit must

be brought in this district, not in Italy."  Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32

F.Supp.2d 118, 124-25 (S.D.N.Y. 1997), aff'd, 161 F.3d 115 (2d Cir. 1998).  Plainly, the fact that

the declaration the Gallery wants is defensive makes no difference, as the Declaratory Judgment

Act "allow[s] prospective defendants to sue to establish their nonliability."  Beacon Theatres,

Inc. v. Westover, 359 U.S. 500, 504 (1959).

      Because this Court clearly has jurisdiction under the Copyright Act, the question whether

diversity exists is at best a side-show.  But in any event,  this Court has subject-matter

jurisdiction based on the diversity of the parties and Defendants' failure to "show to a legal

certainty that the amount recoverable does not meet the jurisdictional threshold."  Burns v. King,

160 Fed. Appx. 108, 111 (2d Cir. 2005).

      As to a dismissal for lack of personal jurisdiction, the Gallery has enumerated the facts

supporting jurisdiction and has identified the consequent need for further discovery to enable this

Court to decide the issue.

13

Defendants cite one other jurisdictional argument to dismiss the entire complaint – the doctrine of *forum non conveniens* – and it is equally wanting. Suit in New York federal court would "settl[e] the legal issues" and "finalize the controversy" by adjudicating the New York and federal questions that control this dispute. And because U.S. rather than Italian law controls, suit in this Court would not "increase friction between sovereign legal systems" and is the "more effective remedy." Lastly, it is Defendants, not the Gallery, who are trying to "race to res judicata" by suing in a foreign court in hopes of evading U.S. law. See Dow Jones & Company, Inc. v. Harrods Limited, 346 F.3d 357, 359-60 (2d Cir. 2003). Clearly this Court is the proper forum for this dispute.

## CONCLUSION

Showing good cause for a discovery stay is Defendants' burden and they have failed to shoulder it. They have not explained how proceeding with discovery will unduly burden them, nor are their other arguments persuasive. This Court should deny their motion.

Dated: New York, New York
      July 21, 2008

PATTERSON BELKNAP WEBB & TYLER LLP

By:    /s/ Robert P. LoBue
        Robert P. LoBue
        Hugh J. Freund
        Matthew B. Larsen
      1133 Avenue of the Americas
      New York, New York  10036
      (212) 336-2000

*Attorneys for the Plaintiffs Sperone Westwater Inc.*
*and Sperone Westwater Gallery, LLC*

14

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SPERONE WESTWATER INC. and SPERONE
WESTWATER GALLERY, LLC,
:    No. 08 CV 3263 (RJH)

            Plaintiffs,
:    **PLAINTIFFS' FIRST REQUEST**
**FOR PRODUCTION OF**
      - against -
:    **DOCUMENTS,**
**ELECTRONICALLY STORED**
ARCHIVIO ALIGHIERO BOETTI,
:    **INFORMATION AND**
AGATA BOETTI, MATTEO BOETTI and
:    **TANGIBLE THINGS**
ANNEMARIE SAUZEAU,

            Defendants.

-------------------------------------------------------------x

       Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs

Sperone Westwater Inc. and Sperone Westwater Gallery, LLC (collectively, the "Gallery") direct

the following requests for production of documents, electronically stored information and

tangible things to defendants Archivio Alighiero Boetti, Agata Boetti, Matteo Boetti and

Annemarie Sauzeau (collectively, the "Defendants") and request that within 30 days of service of

these requests, Defendants produce responsive documents, electronically stored information and

tangible things for inspection and copying at the offices of Patterson Belknap Webb & Tyler

LLP, 1133 Avenue of the Americas, New York, NY 10036.

### DEFINITIONS AND INSTRUCTIONS

       1.      GALLERY. The term "Gallery" means plaintiffs Sperone Westwater Inc. and

Sperone Westwater Gallery, LLC, their owners, officers, directors, agents, servants, employees,

attorneys, accountants and any other persons acting on their behalf.

       2.      DEFENDANTS. The term "Defendants" means defendants Archivio Alighiero

Boetti, Agata Boetti, Matteo Boetti and Annemarie Sauzeau, their officers, directors, agents,

servants, employees, attorneys, accountants, corporate parents, wholly-owned subsidiaries and any other persons acting on their behalf.

3.    BOETTI. The term "Boetti" means the late Italian artist Alighiero Boetti.

4.    CARDI. The term "Cardi" means the Italian gallerist Renato Cardi.

5.    EXHIBITION. The term "Exhibition" means "Simmetria Asimmetria", an exhibition at the Gallery which ran from January 10 to March 2, 2002, and featured the following 15 Boetti works: *AB* (undated), *Simmetria Asimmetria* (1979), *Mettere al Mondo il Mondo* (1972-73), *AELLEIGIACCAIEERREOEBIOETITII* (1983), *Ononimo* (1973), *Ononimo* (1973), *Quando le Parole Sono Stanche* (1982), *Unozero* (1980), *Salezucchero* (1988), *Famedivento* (1980), *Dimenticare il Tempo Perduto* (1982), *Aerei* (1983), *Utile Dilettevole* (1983), *Alighiero e Boetti* (1982) and *I Sei Sensi* (1973).

6.    EXHIBITION CATALOGUE. The term "Exhibition Catalogue" means *Alighiero e Boetti: Simmetria Asimmetria*, the Gallery-published catalogue of the Exhibition works.

7.    EXHIBITION WORKS. The term "Exhibition Works" means the 15 Boetti works enumerated in paragraph 5 above.

8.    ALL/EACH; AND/OR; COMMUNICATION; CONCERNING; DOCUMENT; PERSON. These terms are used in the broadest sense consisted with Rule 34(a) of the Federal Rules of Civil Procedure and Rules 26.3(c) and 26.3(d) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York.

9.    Pursuant to Rule 26.3(d)(3) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, references to the singular shall include the plural, references to the plural shall include the singular, references to the past tense shall include the present tense and references to the present tense shall include the past tense.

10.     Your attention is directed to Rule 26(b)(5) of the Federal Rules of Civil Procedure for the information to be provided when a claim of privilege is asserted.

11.     If any document requested was, but no longer is, in the Defendants' possession, custody or control, state the subject matter of the document, its disposition, the date or dates upon which such disposition was made and, additionally, produce all documents concerning the disposition of such document.

### REQUESTS

1.      All documents concerning each Defendant's contacts with the State of New York since January 1, 2001, including but not limited to documents concerning:

    a)      defendant Annemarie Sauzeau's essay entitled "Monochrome Boetti", reprinted in the Exhibition Catalogue, including but not limited to documents concerning payment for permission to reprint the essay;

    b)      the trip of Defendants' representative, Mr. Andrea Marescalchi, to New York City in 2004 to examine the Boetti work *I sei sensi* (1980);

    c)      all communications sent by the Defendants, and all of the Defendants' advertisements, publications and websites that are or were available, to any person in the State of New York concerning the Defendants' compilation of a *catalogue raisonné* of Boetti works or invitation to authenticate Boetti works;

    d)      all documents and communications received by the Defendants from any person in the State of New York concerning the Defendants' compilation of a *catalogue raisonné* of Boetti works or invitation to authenticate Boetti works;

1489265v.1

e)  with respect to each trip any Defendant has made to the United States since January 1, 2001, documents sufficient to show the dates, destination and purpose of, and any business transacted during, each trip;

f)  all documents concerning any business transacted by any Defendant in the State of New York and all documents concerning any contracts made anywhere with any Defendant to supply goods or services in the State of New York;

g)  all documents concerning any real property situated in the State of New York that any Defendant owns, uses or possesses;

h)  documents sufficient to show revenues obtained by any Defendant from goods used or consumed, or services rendered, in the State of New York, or from the interstate commerce of the United States or between the United States and any foreign country.

2.  All documents concerning defendant Annemarie Sauzeau's trip in 2002 to New York, New York, and Chicago, Illinois.

3.  All documents concerning the 2002 exhibition of Boetti works at the Arts Club of Chicago and defendant Sauzeau's appearance and presentation at that exhibition.

4.  All documents concerning the sale by the Gallery of the Boetti work *Tutto* (1990-91), including documents containing or concerning payments by the Gallery to Defendant Sauzeau in connection with that transaction and Sauzeau's instructions to the Gallery regarding the distribution of the proceeds of sale.

5.  All documents, and all communications between the Defendants and any person, concerning any Boetti work held, exhibited or sold by the Gallery since January 1, 2001,

4

including but not limited to *I sei sensi* (1980) and the Exhibition Works. The Defendants specifically are requested to produce all documents, and all communications between the Defendants and any person, concerning the Defendants' opinions, both past and present, as to whether such works are genuine Boettis.

6.   All documents, and all communications between the Defendants and any person, concerning the certificate of authenticity for *I sei sensi* (1980) that the Defendants issued in 2004.

7.   All documents, and all communications between the Defendants and any person, concerning the Defendants' March 31, 2006, letter requesting to re-examine *I sei sensi* (1980), including but not limited to all documents concerning (as stated in the letter) the "deeper critical and historical understanding of the works of Alighiero Boetti" and alleged "episodes of counterfeited [Boetti] works".

8.   All documents concerning the ownership, at any time, of *I sei sensi* (1980) and the Exhibition Works, including but not limited to bills of sale, documents reflecting chain of title and documents concerning any transfers of interest in such works.

9.   All documents concerning transfers of any interest in any Boetti work by Boetti or by any of the Defendants.

10.   All documents concerning Cardi, and all communications between the Defendants and Cardi.

11.   All documents concerning each submission by Cardi to the Defendants for authentication of a work as a genuine Boetti or inclusion in the Boetti *catalogue raisonné*, including but not limited to all documents relating to Defendants' activities or determination regarding each submission.

1489265v.1

12.    All documents concerning the Defendants' procedures for authenticating a work, including but not limited to the Defendants' procedures for authenticating works presented for inclusion in the Boetti *catalogue raisonné*.  Defendants are specifically requested to produce all documents that concern evidence or indicia that Defendants consider probative of the authenticity of a purported work by Boetti.

13.    All documents reflecting fees requested, charged or received by Defendants in connection with any activity related to the authentication of Boetti works.

14.    All documents concerning works (a) presented to, (b) examined by and (c) deemed authentic or not authentic Boetti works by the Defendants since creation of the defendant Archivio Alighiero Boetti, including but not limited to all declarations or certificates issued by any Defendant regarding the authenticity of any purported work of Boetti.

15.    All documents relied on by the Defendants in making any determination regarding the authenticity of any purported work of Boetti.

16.    All documents concerning the inclusion or non-inclusion in the Boetti *catalogue raisonné* of the Exhibition Works.

17.    All documents concerning the authenticity or attribution of *I se sensi* (1980) or the Exhibition Works as works of Boetti.

18.    All documents concerning  the Boetti *catalogue raisonné* and the schedule for its publication, including without limitation drafts, galley proofs and published volumes.

19.    All documents, and all communications between the Defendants and any person, concerning whether the defendant Archivio Alighiero Boetti is the sole entity that assesses the authenticity of works claimed to be created by Boetti.

20.    Documents sufficient to show the (a) caption, (b) court and (c) subject matter of each lawsuit to which any of the Defendants has been a party since January 1, 1995.

21.    Documents sufficient to show the name, year of creation, purchase price or estimated current market value and, where applicable, purchaser and seller of each Boetti work (a) currently in existence; (b) previously or currently owned by each Defendant; (c) purchased or otherwise obtained by each Defendant since January 1, 1995; and (d) sold by each Defendant since January 1, 1995.

22.    A current staff directory of defendant Archivio Alighiero Boetti and, in addition, documents sufficient to show the name, title, compensation and contact information of each person who has been employed by, or performed a service on behalf of, the defendant Archivio Alighiero Boetti since its creation.

23.    All documents concerning the Defendants' authority to act as authenticator of any works by or said to be by Boetti, including but not limited to a copy of Boetti's will.

24.    All documents concerning the Gallery, including without limitation All communications between the Defendants and any person, other than the Gallery, concerning the Gallery.

25.    All specimens of the autograph signature of Boetti that are admitted by defendants to be authentic.

Dated: May 16, 2008

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
rplobue@pbwt.com

7

By: _____
    Robert P. LoBue
    Hugh J. Freund
    Matthew B. Larsen

*Attorneys for Plaintiffs Sperone Westwater Inc. and*
*Sperone Westwater Gallery, LLC*

8