Hugh J. Freund
Matthew B. Larsen
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
*Attorneys for Plaintiffs Sperone Westwater Inc. and*
*Sperone Westwater Gallery, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | |
|---|---|
| SPERONE WESTWATER INC. and SPERONE WESTWATER GALLERY, LLC, : | No. 08 Civ. 3263 (RJH) (THK) |
| : | |
| Plaintiffs, : | |
| : | |
| - against - : | |
| : | |
| ARCHIVIO ALIGHIERO BOETTI, AGATA BOETTI, MATTEO BOETTI and ANNEMARIE SAUZEAU, : | |
| : | |
| Defendants. : | |

---------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

THE PARTIES................................................................................................................2

BACKGROUND ...........................................................................................................3

I.     The Gallery's exhibition and sale of Boetti works .............................................3

II.    Defendants' pronouncements that previously unobjectionable works are fakes.................6

III.   Defendants' anticipatory Italian suit ............................................................7

IV.    The Gallery's United States action ..............................................................8

ARGUMENT..................................................................................................................9

I.     UNITED STATES LAW GOVERNS THIS DISPUTE...................................................9

II.    THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THE GALLERY'S CLAIMS FOR DECLARATORY JUDGMENT ...............................................................11

       A.  The Gallery's VARA claims are ripe ...................................................11

       B.  The Gallery's VARA claims arise under federal law ...............................14

III.   DISMISSAL IS NOT WARRANTED UNDER *FORUM NON CONVENIENS* ..............15

IV.    ABSTENTION IS NOT WARRANTED .........................................................18

V.     THE GALLERY HAS STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED ...................................................................................................20

       A.  The claims regarding *I sei sensi* are stated properly ...........................20

       B.  The claims regarding the other works are stated properly .......................22

VI.    THIS COURT HAS DIVERSITY JURISDICTION OVER THIS CASE........................24

VII.   THE GALLERY HAS STATED CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ...................................................................................................26

VIII.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ..................27

CONCLUSION................................................................................................................30

i

## INTRODUCTION

Plaintiffs Sperone Westwater Inc. and Sperone Westwater Gallery, LLC (collectively, the "Gallery"), respectfully submit this brief in opposition to the motion of Archivio Alighiero Boetti, Agata Boetti, Matteo Boetti and Annemarie Sauzeau (collectively, "Defendants") to dismiss the complaint.

This dispute concerns a New York gallery's exhibition and sale of artworks in New York. It is governed by United States and New York law. The Gallery seeks a declaration under United States law and damages under properly pleaded New York causes of action. Defendants are subject to the jurisdiction of this Court, which is a far more competent and convenient forum for this case than an Italian tribunal whose country and law have nothing to do with this controversy. This case belongs here.

In 2002, the Gallery held an exhibition at its sole location in New York City of 15 works of the late Italian artist Alighiero Boetti ("Boetti"). After viewing the works in the exhibition, Defendants declared one work a fake but raised no objection to the 14 others after the Gallery asked Defendants whether they had any additional doubts. The Gallery withdrew the questioned work and proceeded to sell most of the works to purchasers in the United States. A New Yorker also bought a Boetti work not shown in the exhibition, *I sei sensi*, from the Gallery for $250,000. At the Gallery's request, Defendants furnished a certificate of authenticity for the piece after inspecting it in New York. All was well until Defendants started announcing, years after the 2002 show, that works they had viewed without objection at the exhibition, and even including *I sei sensi*, were fakes.

Before the subsequent correspondence and negotiation between the parties could run their course, Defendants raced to a tribunal in Milan, Italy. In their Italian suit, Defendants

1

allege that the Gallery violated their "moral rights" by misattributing to Boetti works that Defendants say he did not create. Misattribution of an artwork is actionable under United States law in limited circumstances pursuant to the Visual Artists Rights Act of 1990, added to the Copyright Act at 17 U.S.C. § 106A ("VARA"). VARA is the exclusive source of moral rights in the United States and preempts all equivalent rights under state law. 17 U.S.C. § 301(f). In their Italian suit, Defendants allege that the Gallery's exhibition and sale of artworks in New York violated Defendants' moral rights. Thus Defendants seek relief for a United States gallery's conduct in the United States that allegedly violated a right that United States law regulates. What Defendants actually have pleaded in their Italian action are claims that only properly arise, if it all, under United States law.

Faced with this artfully pleaded attempt to evade governing United States law, the Gallery had a choice: endure years of litigation in Milan and ask the Italian court to construe and apply unfamiliar American law, or file suit in a United States court for adjudication of a controversy occurring in the United States and arising under United States law. It chose the latter. The Gallery should not be subjected to the vagaries of litigation in a forum unrelated to this dispute when an efficient remedy in this Court is readily available.

## THE PARTIES

The Gallery is a prominent and highly reputed New York City art gallery that exhibits and sells works of noted modern artists. (Compl. ¶ 3) One of its principals, Gian Enzo Sperone, was personally acquainted with Boetti, promoted his art and career, and is an expert in Boetti works. (Id. ¶ 11) Defendant Annemarie Sauzeau ("Sauzeau") is Boetti's first wife. Defendants Agata and Matteo Boetti are children of Sauzeau and Boetti. (Id. ¶ 13) After Boetti died in 1994, Sauzeau, Agata and Matteo Boetti created defendant Archivio Alighiero Boetti (the

2

"Archivio"), which Defendants describe as a non-profit association located in Rome, Italy. (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defts' Br.") at 1) The Gallery contends in this case, and believes that discovery will confirm, that Defendants acted as agents of one another and of the Archivio.

## BACKGROUND

I.    **The Gallery's exhibition and sale of Boetti works**

In January 2002, the Gallery exhibited 15 Boetti works in New York and produced a catalogue, which was published in New York, of the works shown at that exhibition. (Compl. ¶¶ 14-15) Sauzeau, a principal of the Archivio, licensed an essay she had written to be reprinted in the exhibition catalogue, and she collected her $300 payment for that permission in person when she visited the Gallery and viewed the exhibition. (Id. ¶ 16)

Mark Pascale, a curator of prints and drawings at the Art Institute of Chicago, was at the Gallery when Sauzeau visited in late January 2002. The Art Institute had agreed to purchase *Alighiero e Boetti*, which was in the exhibition, and Mr. Pascale asked that the work be removed from its frame as part of routine due diligence. The work was so removed and Sauzeau, Mr. Pascale and Gallery principals examined it. Sauzeau expressed her pleasure with the work as well as with the fact that the Art Institute was buying it. (Declaration of David Leiber ("Leiber Decl.") at ¶ 10).[1]

Also while at the Gallery, Sauzeau negotiated the details of her sale of a Boetti work, *Tutto*, to the Gallery. A sale price of $600,000 was agreed upon in New York. The

---

[1] In considering Defendants' motion to dismiss, this Court is required to accept as true the allegations in the Complaint. The Leiber and Del Sordo declarations submitted herewith provide additional facts relevant to the issues of personal jurisdiction and *forum non conveniens*.

3

Gallery wired the money to Sauzeau and sold the work to a California purchaser for $685,000. (Id. ¶ 11)

Around the time of Sauzeau's visit to the Gallery, the Gallery sent a copy of the exhibition catalogue to the Archivio.[2]  Early in February 2002, Sauzeau called the Gallery and said that one piece in the catalogue, *Aerei*, did not "look right."  She said that Defendants needed to inspect the work in Rome.  Rather than endure the delays of an art shipper, the Gallery sent an employee to Rome with the work in hand.  Defendants examined it there and, without any explanation, declared it not authentic.  The Gallery did not necessarily agree, but determined that the work would be unmarketable in light of Defendants' opinion and that its presence in the show could undermine, however wrongly, the other works.  The Gallery therefore immediately removed *Aerei* from the exhibition.  (Compl. ¶ 20;  Leiber Decl. ¶ 15)

As Sauzeau acknowledged in her catalogue essay, Boetti's conception of the artistic process did not require him personally to create his artworks with his own hand.  Often, therefore, he oversaw production at the hands of assistants of the "biro" (ball-point pen) works involved in this case.  (Compl. ¶¶ 12, 17)  Once Boetti acknowledged the works as his own, they became genuine Boettis, but the many hands involved in their creation makes their authentication years after the fact a subjective undertaking.  Because art collectors and auction houses often require the imprimatur of "authentication committees" such as the Archivio before they will buy or handle works of art, entities such as the Archivio wield significant power in the art market

---

[2] This was in keeping with longstanding practice:  after Boetti died, the Gallery in 1995 held a solo show of his works for which Defendants asked to be sent the catalogue or list of exhibited pieces.  They did the same thing in 2001, when the Gallery held another solo show of Boetti works.  They also did the same thing in 1997, 2000 and 2001, when the Gallery featured Boetti works in group shows.  The Gallery was in continuous contact with Sauzeau during the mid- and late-1990s, trying to arrange for a retrospective of Boetti works to tour the United States, although such a tour ultimately proved unworkable.  (Leiber Decl. ¶ 12)

4

even when their members have conflicts of interest due to their personal ownership of the artist's works.  (Compl. ¶ 13;  Leiber Decl. ¶ 4)

The Gallery therefore was heavily reliant on the Archivio, if not at its mercy, for the viability of the Boetti exhibition, and asked Sauzeau whether Defendants had any concerns about any other works in the exhibition and, if so, to say so.  Neither Sauzeau nor the other Defendants expressed any further doubts.  This assured the Gallery that Defendants had no objections to the exhibition and sale of the other works as authentic Boettis.  It was clear to the Gallery that Defendants were aware of the Gallery's strong good-faith reliance on them as purported experts in Boetti works.  (Leiber Decl. ¶ 16)

Of the 14 works remaining in the exhibition after the removal of *Aerei*, 8 were sold, and 7 of those 8 were sold to United States purchasers.  (Id. ¶ 17)

The Gallery also sold a Boetti work not shown in the exhibition, *I sei sensi*, for $250,000 in 2004 to a New York collector.  The purchaser insisted on having a certificate of authenticity for the piece, so the Gallery contacted Defendants.  After the Gallery sent extensive documentation to Defendants and communicated with Sauzeau at length, she insisted on sending an agent of the Archivio to inspect the work in New York.  That agent, Andrea Marescalchi, accompanied the Gallery's director in February 2004 to the New York residence of *I sei sensi*'s purchaser.  There, Mr. Marescalchi removed the work, which is comprised of 9 panels, from its frame and proceeded to examine several panels front and back, taking both notes and photographs.  After more than an hour of such examination, he said that he had seen enough and that he thought the work was genuine but that he had to report back to the Archivio.  The Archivio issued a certificate of authenticity for *I sei sensi* on March 19, 2004, which the Gallery

5

(and presumably its client) relied on in confirming the sale of the work. (Compl. ¶¶ 22-24; Leiber Decl. ¶¶ 18-19)

## II.    Defendants' pronouncements that previously unobjectionable works are fakes

After the sale of *I sei sensi* in early 2004, Defendants suddenly declared that *Unozero*, a work they viewed in 2002 alongside the questioned *Aerei* but said nothing about, was fake. (Compl. ¶ 25; Leiber Decl. ¶20) In 2006, Defendants impugned another Boetti sold by the Gallery, *Alighiero e Boetti*, by sending a letter to its purchaser, the Art Institute of Chicago, questioning its authenticity. This is the same work that Sauzeau said she was pleased with when she examined it out of its frame at the Gallery in January 2002. (Leiber Decl. ¶ 23) Defendants then cast a cloud on *I sei sensi* in a letter dated March 31, 2006, in which they asked the Gallery if they could re-examine the piece in light of alleged "episodes of counterfeited works." This suggestion of fakery was tantamount to tearing up the certificate of authenticity Defendants had issued for the work in 2004. (Compl. ¶ 60; Leiber Decl. ¶ 22) Also in 2006, Defendants announced that the previously unquestioned *Salezucchero* was a fake, and the Gallery consequently refunded the purchaser. (Leiber Decl. ¶ 21) Most recently, in January 2008, Defendants for the first time informed the Gallery of their alleged doubt concerning the authenticity of the Boetti work *AELLEIGIACCAIEERREOEBIOETITII*— a doubt Defendants shared with Christie's auction house in 2001 but concealed from the Gallery when viewing the work at the Gallery in 2002. (Compl. ¶¶ 25-30) Defendants now purport to express concern that other Boetti works the Gallery exhibited in 2002 could be fakes. (Id. ¶¶ 31-32)

All these flip-flops naturally troubled the Gallery, particularly because individual Defendants are believed to own millions of dollars' worth of Boettis (Leiber Decl. ¶ 4), and could enhance the value of their holdings by casting aspersions on Boettis owned by others. The

6

Gallery began negotiating with Defendants in 2006 regarding their purported newfound doubts about already-reviewed works of art. These negotiations actively continued through at least late 2007. Defendants' January 2008 suit against the Gallery in Milan, Italy, came as a surprise to the Gallery because it believed that negotiations still were ongoing. (Leiber Decl. ¶ 26)

## III.   Defendants' anticipatory Italian suit

On or about January 29, 2008, Defendants initiated an action (the "Italian Suit") in the Tribunale Ordinario di Milano ("Milan Tribunal") against the Gallery and Renato Cardi ("Cardi"), an Italian gallery owner from whom the Gallery had purchased economic interests in 10 of the 15 Boetti works shown in the 2002 exhibition. (Compl. ¶ 18; Leiber Decl. ¶ 6; Declaration of Felice d'Alfonso del Sordo ("Del Sordo Decl."), submitted herewith, at ¶ 12)

Defendants' Italian suit principally seeks a prior restraint against the Gallery forbidding it from expressing its opinion that the Boettis it exhibited and sold are genuine. Defendants also request damages for the alleged violation of their moral rights that occurred as much as six years ago when the Gallery exhibited and sold the works at issue as Boettis. Defendants say that at least four of those works – *Aerei, Unozero, Salezucchero* and *AELLEIGIACCAIEERREOEBIOETITII* – are fakes or of doubtful authenticity, which allegedly puts the authenticity of other works shown in the 2002 exhibition in doubt. Thus Agata and Matteo Boetti assert, on behalf of their deceased father, a violation of the moral right against misattribution to Boetti of works that he allegedly did not create. Sauzeau claims that the Gallery additionally violated her moral rights by publishing her essay in the exhibition catalogue with her permission: she says that the presence of her essay wrongfully put her imprimatur on a collection of questionable or phony works. (Compl. ¶¶ 34-35)

7

The Italian suit also seeks a declaration that Defendants' recently cast aspersions, directed at Gallery-sold works they previously authenticated explicitly or implicitly, generate no liability to the Gallery. (Id. ¶ 36) Finally, Defendants ask the Italian court to determine whether the 10 works in which the Gallery purchased economic interests from Cardi are genuine Boettis. (Id. ¶ 37) This request is unrealistic: the Italian complaint does not request a court expert to examine the works, which in any event are beyond the Milan Tribunal's reach given that nearly all of them are in the hands of private United States collectors. (Leiber Decl. ¶ 17; Del Sordo Decl. ¶ 10) Thus the Milan Tribunal almost certainly would be unable to rule on the authenticity of the disputed works.

## IV. **The Gallery's United States action**

The Gallery commenced this lawsuit on April 1, 2008, seeking a declaratory judgment that, pursuant to controlling United States law, the Gallery has not violated Defendants' moral rights. The Gallery asserts three causes of action for declaratory judgment pursuant to VARA. First, that Agata and Matteo Boetti have no actionable moral rights on behalf of their father because the pieces at issue here are not works that VARA protects after the death of the artist. (Id. ¶¶ 38-44) Second, that Sauzeau has no moral rights with respect to her catalogue essay because VARA confers moral rights only with respect to works of visual art. (Id. ¶¶ 45-49) Third, that Defendants have no actionable moral rights in any event because VARA imposes a three-year statute of limitations which already has expired in this case. (Id. ¶¶ 50-54) Each of these claims asserts that the Gallery's conduct is governed by United States law and requires construction of VARA by this Court.

The Gallery also asserts state-law causes of action for damages based on Defendants' many reversals of opinion. These claims are within this Court's supplemental and

diversity jurisdiction. (Id. ¶¶ 55-77)  The Gallery does not seek to restrain Defendants from

"express[ing] their opinions." (Defts' Br. at 2)  Rather, through its state-law claims the Gallery

seeks compensation for Defendants' wrongful and injurious past <u>conduct</u> as parties who hold

themselves out as experts in Boetti and the sole source of authentication of Boetti works.

**ARGUMENT**

**I.    <u>UNITED STATES LAW GOVERNS THIS DISPUTE</u>**

      VARA is the exclusive source of moral rights in the United States, a body of law

that originated in Europe and confers on artists the rights to attribute a work of art properly and

prevent its alteration.  <u>See</u> R. Lerner & J. Bresler, <u>Art Law</u> (Practising Law Institute, 3d ed.

2005), 1251-57.  VARA preempts all equivalent rights under state law, 17 U.S.C. § 301(f), and

recognizes the right against misattribution that Defendants seek to enforce in Italy.  17 U.S.C. §

106A(a)(1)(B).

      VARA, not Italian law, governs the dispute between the parties because the

question whether the Gallery violated Defendants' moral rights by conduct wholly in the United

States is a question of United States law.  Because "the Copyright Act [of which VARA is part]

has no choice of law provision, the matter is left to federal common law." <u>Bridgeman Art</u>

<u>Library, Ltd. v. Corel Corp.</u>, 25 F.Supp.2d 421, 425 (S.D.N.Y. 1998).  And the "federal common

law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the

litigation." <u>In re Koreag, Controle et Revision S.A.</u>, 961 F.2d 341, 350-51 (2d Cir. 1992)

(applying New York law where "[plaintiff] is incorporated under the laws of New York, with its

principal place of business in New York City.  [Plaintiff] performed its obligations under the

contract, including confirming the individual transactions, from its New York offices.  The

Disputed Funds and the Account are located in New York.  Moreover, New York as a world

9

financial center has a special concern with transactions such as occurred here and spawned this litigation").

The United States, not Italy, has the greatest interest in a United States gallery's exhibition and sale of artworks in the United States. So too, the United States has the greatest interest in determining whether a United States publication – here, the exhibition catalogue – is actionable. In Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d Cir. 1998), for example, the Second Circuit noted that for copyright "infringement issues, the governing conflicts principle is usually *lex loci delicti,* the doctrine generally applicable to torts." Id. at 91. Infringement of a copyright is analogous to violation of a moral right. In Itar-Tass, the Court ruled that United States rather than Russian law governed the infringement question because "not only is this country the place of the tort, but also the [party accused of infringement] is a United States corporation." Id. Likewise, the place of the alleged moral-rights violations in this case is the United States, and the party accused of the violation is a United States resident.

As this Court recognized in a case of alleged violation of foreign moral rights, the party accused of the violation "undertook no actions in foreign countries with respect to [complainant's] music. Under these circumstances, [the party] is not subject to foreign laws including foreign moral rights laws." Franconero v. Universal Music Corp., 2003 WL 22990060 at *2 (S.D.N.Y. 2003). The same rule applies here: because the Gallery allegedly violated Defendants' moral rights in this country, United States rather than Italian law controls this dispute. Applying Italian law to the Gallery's alleged misconduct in New York would be as unreasonable as applying Milan's traffic regulations to a car crash in Times Square.

The Gallery's contract and tort claims also are governed by United States rather than Italian law. Whether this Court views the claims as within its supplemental or diversity jurisdiction, the same choice-of-law rule requires application of New York law because New York, not Milan, has the greatest interest in this litigation. See, e.g., Grandon v. Merrill Lynch and Co., Inc., 2003 WL 22118979 at *9 (S.D.N.Y. 2003) ("A federal court sitting in diversity or adjudicating state law claims that are pendant to a federal claim must apply the choice of law rules of the forum state. . . . In tort cases . . . New York applies the law of the state with the most significant interest in the litigation. . . . When plaintiffs and defendants are domiciled in different states . . . , the state in which the tort allegedly took place has the greatest interest, and its law is usually applied.") (internal quotation marks and citations omitted).

## II.    THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THE GALLERY'S CLAIMS FOR DECLARATORY JUDGMENT

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, the court must assume all factual allegations in the Complaint to be true." McCray v. City of New York, 2007 WL 4352748 (S.D.N.Y. Slip Op. Dec. 11, 2007).

### A.    The Gallery's VARA claims are ripe

The question whether the Gallery violated Defendants' moral rights is ready for adjudication under the two-part test for ripeness. See New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 131 (2d Cir. 2008). The first criterion, "constitutional ripeness," requires that there be an "actual dispute." Id. See also Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (Constitutional ripeness requires "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (quoting Maryland Cas. Co. v.

Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). The second criterion, "prudential ripeness," requires analysis of the dispute's fitness for adjudication and the hardship to the parties of withholding such adjudication. See Grandeau, 528 F.3d at 131-32. The dispute between the Gallery and Defendants is ripe on both counts.

In the constitutional sense, this controversy hardly could be riper: Defendants have sued the Gallery for damages and a prior restraint in Italy on the theory that the Gallery violated their moral rights, and for a declaration that they are not liable to the Gallery. See Insurance Co. of North America v. Vermont Mut. Ins. Co., 835 F.Supp. 176, 181 (D.Vt. 1993) ("[A]n actual controversy most certainly exists: [defendant] has sued [plaintiff] in state court."). The Gallery denies violating Defendants' moral rights and seeks a declaration of non-liability under VARA, which properly controls this dispute and which Defendants have attempted to evade by suing in Italy. A determination that Defendants have no cause of action under governing United States law will settle the rights and obligations of the parties, and presumably will be heeded by Defendants and the Milan Tribunal. If not, this Court will have the authority on motion to enforce its judgment by appropriate means. See, e.g., Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F.Supp.2d 118 (S.D.N.Y. 1997), aff'd 161 F.3d 115 (2d Cir. 1998) (granting anti-suit injunction against parties pursuing Italian litigation).

The Gallery's claims also are prudentially ripe. The first prong of this inquiry, fitness of the dispute for adjudication, concerns "whether the issues sought to be adjudicated are contingent on future events or may never occur." Grandeau, 528 F.3d at 132 (internal quotation marks and citation omitted). Determining whether the Gallery's past exhibition and sale of works attributed to Boetti violated Defendants' moral rights does not depend on future or hypothetical events. The Gallery asks this Court to apply VARA, a federal statute, to the facts at

12

hand, and the federal Declaratory Judgment Act "allow[s] prospective defendants to sue to establish their nonliability." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959). Likewise, the Gallery's claims will "not benefit from any further factual development," Grandeau, 528 F.3d at 132, because the question whether Defendants have any actionable moral rights under VARA is a legal question requiring little additional factual information. See also Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1212 (9th Cir. 2006) ("[P]ure legal questions that require little factual development are more likely to be ripe.") (internal quotation marks and citation omitted).  For example, VARA does not protect written works such as Sauzeau's essay, 17 U.S.C. § 101, its three-year statute of limitations precludes Defendants' claims over an exhibition and sales occurring six years ago, 17 U.S.C. § 507(b), and if, as the Gallery alleges on information and belief (Compl. ¶ 42), Boetti disposed of title to the works at issue before June 1, 1991, then his moral rights expired when he died in 1994.  17 U.S.C. § 106A(d).[3]

The second prong of the prudential-ripeness inquiry assesses "whether and to what extent the parties will endure hardship if decision is withheld." Grandeau, 528 F.3d at 134 (internal quotation marks and citation omitted).  The hardship to the Gallery if this Court withholds decision is clear:  a cumbersome, distant and costly subjugation to foreign law or a foreign court's attempt to interpret United States and New York law, which will continue to constrain the Gallery from dealing in works like those Defendants have wrongly impugned, versus a speedy determination of United States law by a court well qualified to do so.  (Del Sordo Decl. ¶¶ 7-11;  Leiber Decl. ¶¶ 3, 24)

---

[3] The Gallery has served a document request on Defendants addressed to this issue.  Discovery currently is stayed pending resolution of Defendants' formal motion to stay discovery.

It is for instances such as this that the declaratory-judgment remedy was created, and it was to secure a relatively speedy resolution of this dispute that the Gallery came to this Court.

**B.      The Gallery's VARA claims arise under federal law**

The Gallery's request for a declaration of non-liability under federal law plainly arises under federal law.  Defendants try to confuse the issue by saying that federal defenses to non-federal causes of action do not "arise under" federal law, and because <u>Defendants</u> do not "assert any rights under federal law, [] there is no federal jurisdiction." (Defts' Br. at 14)  This is just wrong.  An allegation by a putative infringer that the United States Copyright Act supplies the exclusive remedy for an alleged infringement of copyrightable subject matter creates federal jurisdiction.  In <u>Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296 (2d Cir. 2004), for example, the Second Circuit held that a case initially brought in state court exclusively under non-federal law theories of recovery had been properly removed to federal court because the plaintiff's claims could only properly be asserted, if at all, under the Copyright Act.  The principle applies equally here:  a party may not defeat federal jurisdiction merely by insisting that its claims are non-federal, and filing them in the wrong court, when they properly can arise only under the Copyright Act, if at all.

Defendants do not explicitly assert any claims under United States law because they want to evade this Court's jurisdiction.  But artfully pleading their claims under foreign law does not mean that the Gallery's United States claims do not arise under United States law.  The moral right against misattribution, which Defendants say was violated and for which the Gallery seeks a declaration of non-liability, is recognized and regulated by the United States Copyright Act governing this dispute.  17 U.S.C. §106A(a)(1)(B).  Despite draping their foreign action in

14

Italian garb, Defendants' claims rightly arise under the United States law that applies to this controversy. A "plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." Sullivan v. American Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005). By the same token, claims properly arising under VARA belong in federal court despite a party's artful pleading of foreign law in a foreign court.[4]

## III.   DISMISSAL IS NOT WARRANTED UNDER *FORUM NON CONVENIENS*

In moving to dismiss based on the doctrine of *forum non conveniens*, Defendants bear "a heavy burden in opposing the [Gallery's] chosen forum." Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 127 S.Ct. 1184, 1191 (2007). "The plaintiff's choice of forum should only be disturbed if the balance of factors strongly favors the defendants." Herbstein v. Bruetman, 743 F.Supp. 184, 188 (S.D.N.Y. 1990).

"Ordinarily a strong favorable presumption is applied to [a plaintiff's forum of] choice." DiRienzo v. Philip Services Corp., 294 F.3d 21, 28 (2d Cir. 2002) (citations omitted). In DiRienzo, the Second Circuit saw "no evidence [that plaintiffs] had an improper motive in bringing suit [in federal district court]. In fact, plaintiffs offered a quite valid reason for litigating in federal court: this country's interest in having United States courts enforce United States securities laws." Id. Here, the United States likewise has an interest in having United States courts enforce United States intellectual-property laws, and there is no evidence that the

---

[4] Defendants rely on inapplicable authority by citing cases where the plaintiff had sought a declaration specifically regarding the enforceability of an actual or potential ruling from another court. See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1201 (9th Cir. 2006); Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F.Supp.2d 394, 407-08 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003); Basic v. Fitzroy Engineering, Ltd., 949 F.Supp. 1333, 1337 (N.D.Ill. 1996). These cases did not concern, however, claims exclusively governed by the Copyright Act and therefore controlled by Briarpatch, nor did they raise issues of "artful pleading" to evade jurisdiction.

Gallery had an improper motive in bringing suit in this Court. The suit appropriately seeks relief under United States and New York law concerning a dispute over a New York gallery's exhibition and sale of art in New York. Thus the Gallery's choice of this forum is entitled to a "strong favorable presumption." Id.

This is especially so given the Milan Tribunal's probable inability to address all the Gallery's claims adequately. In "the context of a motion to dismiss for *forum non conveniens,* a foreign jurisdiction is not adequate unless it 'will permit [the plaintiff] to litigate the subject matter of its dispute.'" Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc., 466 F.3d 88, 95 (2d Cir. 2006) (citation omitted). Defendants have not shown that the Milan Tribunal is an adequate forum for adjudication of the Gallery's claims asserted under VARA or New York law, which the Milan Tribunal has no experience interpreting or applying. (Del Sordo Decl. ¶ 9)

Additionally, the "burden of demonstrating that the [Gallery's] chosen forum is not convenient is on the [D]efendant[s]." DiRienzo, 294 F.3d at 29. "[D]efendants' current claims of inconvenience raise questions as to their underlying motives. . . . 'Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of forum-shopping reasons.'" Id. (citation omitted).

Defendants' Italian Suit is typical forum shopping: evidently aware that they have no moral-rights claims against the Gallery under United States law, and potentially quite aware of the liability their dodgy behavior could invite in a United States court, Defendants sued in a forum where they apparently believe the law and the atmospherics are to their advantage, and

16

they did so only after the Gallery threatened legal action against them.  This forum shopping "counsels caution in evaluating their *forum non conveniens* motion."  Id.

        None of the supposed inconveniences which Defendants proffer demonstrates that trial in this Court will entail "oppressiveness and vexation to [Defendants] . . . out of all proportion to [the Gallery's] convenience."  (Defts' Br. at 15, quoting American Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994))  Defendants say that trial in New York would be inconvenient because some employees of the Archivio might not speak English and translating certain documents may be costly.  (Defts' Br. at 17)  The Gallery believes that all three individual Defendants speak English very well.  (Del Sordo Decl. ¶ 3)  In any event, documents relevant to the case exist in both languages and some will have to be translated wherever this case winds up.  Defendants also complain that obtaining evidence from Cardi could be inconvenient (Defts' Br. at 17), but Cardi long ago supplied the Archivio with his evidence concerning authenticity of the works in question (Compl. ¶ 19), and Defendants do not specify what additional evidence they need from him.  On the other hand, in its Rule 26(a)(1) initial disclosures, the Gallery identifies Mark Pascale, of the Art Institute of Chicago, as a non-party witness on whom it intends to rely, and has provided an indication of the facts to which the Gallery believes he can testify.  (Leiber Decl. ¶ 10)  Getting evidence from Pascale in the Italian Suit would likely be just as inconvenient as getting evidence from Cardi here.  Defendants have not shown that the inconvenience they say they will bear in this Court is "out of all proportion" to the Gallery's convenience of actually trying this case in the forum where it is based and where the events at issue occurred.

        In a last stab at arguing that a dispute concerning a New York gallery's exhibition and sale of artworks in New York would be more conveniently tried in Italy, Defendants assert that Italy has an interest in this case because the Gallery's suit "challenges the legitimacy of [the

17

Archivio's] operations, opinions, and efforts to prepare a *catalogue raisonné*." (Defts' Br. at 18)

That is incorrect. None of the Gallery's claims for relief challenges the right of the Archivio to

operate, opine or publish the long-overdue *catalogue raisonné*. What the Gallery wants is to

settle its rights and obligations under United States law, and compensation under New York law

for Defendants' past conduct that has injured and continues to injure the Gallery. This Court is a

convenient forum for resolution of those claims. Defendants have not shouldered their "heavy

burden in opposing the [Gallery's] chosen forum." Sinochem, 127 S.Ct. at 1191.

## IV.    ABSTENTION IS NOT WARRANTED

This Court has jurisdiction over this case. It should not relinquish it. Courts have

discretion whether to hear declaratory-judgment cases within their jurisdiction, but none of the

five factors guiding such discretion, see Dow Jones, 346 F.3d at 359-60 (citing Wilton v. Seven

Falls Company, 515 U.S. 277, 286 (1995)), favors declining jurisdiction in this case. Judgment

in this Court will (1) "settl[e] the legal issues involved" and (2) "finalize the controversy," id. at

359, because United States, not Italian, law governs this dispute. Defendants say that at the

"core" of the Italian Suit is "whether the works at issue were created by Boetti" (Defts' Br. at 19),

but they omit the fact that it is improbable that the Milan Tribunal actually could rule on the

authenticity of the disputed works. (Del Sordo Decl. ¶ 10) The Gallery has not asked this Court

to authenticate the works, and the Court need not do so to rule on the Gallery's VARA claims.

See supra at p. 8.

Additionally, suit in this Court will not (3) "increase friction between sovereign

legal systems" and is the (4) "more effective remedy," 346 F.3d at 359-60, because trial in New

York properly will adjudicate a dispute that concerns a New York gallery's conduct in New York

and that arises under United States and New York law. If anything, suit in Italy would cause

1957450v.1

"friction" by potentially applying Italian law to a dispute arising under United States law, and by

subjecting the Gallery to foreign law for conduct occurring in New York.  Finally, Defendants

are engaged in (5) "'procedural fencing' or a 'race to res judicata,'" id. at 359, because their Italian

Suit is an attempt to evade United States law and subject the Gallery to inapplicable law in a

forum unrelated to this dispute.  Thus declining jurisdiction here would neither be equitable to

the Gallery nor serve this Court's interest in enforcing United States law.

   Defendants' other arguments for abstaining are not persuasive.  First, the fact that

Defendants commenced their Italian Suit a mere two months before this proceeding does not

command deference to that action, especially because that suit is evasive forum shopping which

has not "proceeded beyond an initial stage."  Caspian Investments, Ltd. v. Vicom Holdings, Ltd.,

770 F.Supp. 880, 885 (S.D.N.Y. 1991) (dismissing case because "trial [was] imminent" in prior

foreign suit filed by same plaintiff 16 months earlier).  See also Herbstein v. Bruetman, 743

F.Supp. 184, 188 (S.D.N.Y. 1990) (action not dismissed because foreign proceedings were "in

their preliminary stages").  Here, nothing has happened in the Italian Suit.  The initial, non-

substantive appearance will not even occur until October 28, 2008.  (Del Sordo Decl. ¶ 11)

Second, this Court has supplemental jurisdiction over the Gallery's state-law claims because they

"form part of the same case or controversy" which the Gallery's VARA claims concern.  28

U.S.C. § 1367(a).  Such jurisdiction should not be declined given that the New York claims do

not raise "a novel or complex issue of State law" or "substantially predominate[]" over the

VARA claims.  28 U.S.C. §§ 1367(c)(1), (2).  There also are no "exceptional circumstances . . .

[or] other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).[5]  Even if this

---

[5] Defendants' invocation of the "exceptional circumstances" test of Colorado River Water
Conservation District v. United States, 424 U.S. 800 (1976), is puzzling given that the test does
not apply to declaratory-judgment actions.  See Wilton v. Seven Falls Company, 515 U.S. 277,

Court were to dismiss the Gallery's VARA claims, it still would have diversity jurisdiction over the New York claims, which would be far better decided by this Court than by the Milan Tribunal.

## V.    THE GALLERY HAS STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), did not change the rule that, in deciding a motion to dismiss for failure to state a claim, a court must accept as true all factual allegations in the complaint.

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Twombly).  Taking as true the Gallery's factual allegations as well as the reasonable inferences drawn from them, the Gallery has stated its claims properly.

### A.    The claims regarding *I sei sensi* are stated properly

The claims concerning *I sei sensi*, for breach of the implied covenant of good faith and fair dealing (Count Four) and negligent misrepresentation (Count Five), allege in the alternative that Defendants are liable for their actions whether or not *I sei sensi* is authentic.  If authentic, Defendants breached their obligation of good faith and fair dealing by effectively revoking the certificate and should be estopped from doing so because of the Gallery's

---

286 (1995).  As discussed above, abstention is not warranted here under the properly applicable factors enumerated in Wilton and Dow Jones.  Additionally, the "exceptional circumstances" of Colorado River, the "most important" of which was a "clear federal policy . . . [of] avoidance of piecemeal litigation of water rights," 424 U.S at 819, are not present in this case.

reasonable reliance on that certificate. If not authentic, Defendants acted negligently in issuing the certificate in the first place.

The Gallery has standing to raise these claims because Defendants have damaged the Gallery. A cloud of doubt wrongly hangs over the Gallery and *I sei sensi* due to Defendants' suggestion that they were too hasty in authenticating the work. This has injured the Gallery's reputation generally and business particularly by constraining its ability to deal in Boetti works. (Compl. ¶¶ 60, 62, 66; Leiber Decl. ¶ 24) The Gallery was in privity with Defendants because of Defendants' agreement to examine and, if warranted, certify *I sei sensi* at the Gallery's request and for its benefit. (Compl. ¶¶ 24, 62; Leiber Decl. ¶¶ 18-19)

The Gallery does not "seek a warranty from Defendants" (Defts' Br. at 24), but rather to enforce the implied covenant of good faith and fair dealing.

> Under New York law, "implicit in all contracts is a covenant of good faith and fair dealing in the course of the contract performance." This implied obligation encompasses the performance of "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." It also encompasses the obligation that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."

DBT Gmbh v. J.L. Min. Co., 544 F.Supp.2d 364, 384 (S.D.N.Y. 2008) (citations omitted). After the Gallery sent extensive documentation regarding *I sei sensi* to Defendants and communicated with Sauzeau at length about the piece, Defendants insisted on sending an agent to inspect the work in New York. That agent spent more than an hour doing so, taking notes, photographs and expressing his opinion that the work was genuine, which Defendants confirmed by issuing the certificate of authenticity. (Compl. ¶ 24; Leiber Decl. ¶ 18) After all that, the Gallery very reasonably believed the work to be genuine, as Defendants certified. Thus the Gallery was "justified in understanding" that Defendants stood by the work's authenticity, and Defendants'

effective revocation of the certificate had "the effect of destroying or injuring the right of the

[Gallery] to receive the fruits of the contract." DBT, 544 F.Supp.2d at 384.

The Gallery's alternative claim for Defendants' negligent authentication of *I sei*

*sensi*, based on Defendants' apparently changed opinion that the work is not genuine, also is

proper because pleading alternate or inconsistent theories is permissible, see Fed. R. Civ. P. 8(d),

and there is no requirement under New York law that the duty of care owed under a negligence

theory must be "separate and apart from those duties owed by defendant under [a] contract."

(Defts' Br. at 25, 26)  A claim of negligence requires only "(1) the existence of a duty on

defendant's part as to plaintiff;  (2) a breach of this duty;  and (3) injury to the plaintiff as a result

thereof." Akins v. Glens Falls City School Dist., 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648

(N.Y. 1981).  The Gallery has alleged that, "[i]n agreeing to examine *I sei sensi*, the Defendants

assumed a duty to perform that examination with the requisite degree of care," and that if the

work "is not authentic, then the Archivio was negligent in issuing the certificate of authenticity,

causing the Gallery reputational and economic damages." (Compl. ¶¶ 64, 66)  This states a

valid, non-duplicative claim.

**B.**     **The claims regarding the other works are stated properly**

The Gallery has stated a proper claim for negligent misrepresentation concerning

the other works (Count Six).  Under New York law,

> a duty to speak with care exists when "the relationship of the parties,
> arising out of contract or otherwise, [is] such that in morals and good
> conscience the one has the right to rely upon the other for information."
> This reliance must be justifiable, as a "casual response given informally
> does not stand on the same legal footing as a deliberate representation for
> purposes of determining whether an action in negligence has been
> established." . . .
>
> [L]iability for negligent misrepresentation has been imposed only on those
> persons who possess unique or specialized expertise, or who are in a

22

special position of confidence and trust with the injured party such that
reliance on the negligent misrepresentation is justified.

Kimmell v. Schaefer, 89 N.Y.2d 257, 263, 675 N.E.2d 450, 454 (N.Y. 1996) (citations omitted).

Based on their review of the 2002 exhibition catalogue, Defendants informed the

Gallery that one of the 15 works, *Aerei*, did not "look right." (Leiber Decl. ¶ 15) They said they

needed to inspect the piece in Rome, and the Gallery swiftly dispatched an employee there with

the work in hand. Defendants examined *Aerei* and declared that it was not authentic. The

Gallery then asked Defendants whether they had concerns about any of the 14 other works and,

if so, to say so. Defendants said nothing. (Id. ¶ 16)

Not only did Defendants purport to have "unique or specialized expertise," but

they held a "special position of confidence and trust with the [Gallery]" given their ability in the

art world to dictate the marketability of Boetti works (Compl. ¶ 1; Leiber Decl. ¶ 4) and the

Gallery's consequent reliance on them. Kimmell, 89 N.Y.2d at 263, 675 N.E.2d at 454. Thus

Defendants had a "duty to speak with care" regarding the 14 other works because "in morals and

good conscience the [Gallery] ha[d] the right to rely upon the [Defendants] for information." Id.

When the Gallery specifically asked Defendants whether they had any doubts as to the 14 other

works and Defendants voiced no objections, the Gallery reasonably concluded that Defendants

stood by the authenticity of those pieces. Defendants' later disparagements of the works thus

breached their "duty to speak with care" when asked. These disparagements, concerning works

that the Gallery held ownership interests in and sold to its clients, have damaged the Gallery's

business and reputation. (Compl. ¶¶ 18, 71, 73; Leiber Decl. ¶¶ 6, 24-25)

In addition to stating a claim for negligent misrepresentation, these allegations

also state a claim for interference with business relations (Count Seven). That cause of action

requires the Gallery to show "(1) business relations with a third party; (2) defendants'

23

interference with those business relations;  (3) defendants acted with the sole purpose of harming

the plaintiff or used dishonest, unfair, or improper means;  and (4) injury to the relationship."

Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994). Here, Defendants interfered with the

Gallery's business relations with its clients by telling those clients that the works they bought

from the Gallery are not authentic.  The individual Defendants had personal economic interests

in doing so because of their ownership of millions of dollars' worth of Boettis, and their

consequent motivation to impair the marketability of competing works owned by others.  This

interference has injured the Gallery's business relations by causing the Gallery to refund one

purchaser (so far) and by constraining the Gallery's ability to deal in Boetti works.  (Compl. ¶ 77;

Leiber Decl. ¶¶ 20, 21, 23, 24)  This interference was by "dishonest, unfair, or improper means"

because Defendants disparaged works which the Gallery specifically had asked them to express

any doubts over, but concerning which Defendants had said nothing.  Damages include the

$29,227.50 refund for *Salezucchero* as well as the substantial decline in the Gallery's Boetti

business attributable to Defendants' many disparagements and reversals of opinion.  (Leiber

Decl. ¶¶ 21, 24-25)

> Because Defendants' breach of the implied covenant of good faith and fair

dealing, negligent misrepresentations and interference with business relations already have

damaged the Gallery, its claims are ripe and it has standing to pursue them.

## VI.    THIS COURT HAS DIVERSITY JURISDICTION OVER THIS CASE

> First, the Gallery has alleged damages to its "business and reputation, in an

amount to be determined by the finder of fact but in excess of $75,000."  (Compl. p. 18)  (Leiber

Decl. ¶¶ 24-25)  Defendants argue that it is a "legal certainty" that the Gallery's damages do not

satisfy the jurisdictional amount because the Gallery's claims are unripe.  (Defts' Br. at 30)  But

24

Defendants' mistaken assertions about ripeness merely are argument, and argument is neither fact nor "legal certainty." The Gallery alleges damages well over $75,000 attributable to Defendants' misconduct (Leiber Decl ¶¶ 24-25), and this satisfies the amount-in-controversy pleading requirement. See, e.g., Ijemba v. Litchman, 127 Fed.Appx. 5, 7 (2d Cir. 2005) ("[Plaintiff] seeks to recover the $10,000 retainer he paid to the defendants, as well as other damages he allegedly incurred due to the defendants' misconduct. On the current record and the arguments present to us, we are unable to ascertain 'to a legal certainty' that [plaintiff's] potential recovery is less than $75,000.").

Second, Cardi is not a required party. Rule 19(a) of the Federal Rules of Civil Procedure defines someone who is a "required party" to an action. Rule 19(b) sets out factors to guide the Court in deciding whether to dismiss the action if a required party cannot be joined. Rule 19(b) used to state that such a party was "regarded as indispensable," but that language recently "has been discarded as redundant." Adv. Cmte. Notes, 2007 Amdt., Fed. R. Civ. P. 19. Cardi is not a required party under Rule 19(a) because he has not "claim[ed] an interest relating to the subject of the action," Fed. R. Civ. P. 19(a)(1)(B), and because "the court can[] accord complete relief among the existing parties." Fed. R. Civ. P. 19(a)(1)(A). The Gallery brought this suit to clarify that it is not liable to Defendants under United States law for the alleged violations of their moral rights in connection with the 2002 exhibition and sales, and to recover damages attributable to Defendants' conduct stemming from those events. Cardi is but one of several prior owners in the chains of title of the works in question, and his presence is no more required for this Court to rule on these claims than is that of other prior owners. Should a party here be found liable for what that party considers Cardi's fault, it can seek recovery from him in a subsequent action. See, e.g., Nelligan ex rel. Estate of Proia v. Community General Hosp. of

Sullivan County, 240 F.R.D. 123, 125 (S.D.N.Y. 2007) (A "plaintiff does not need to include all

joint tortfeasors as defendants in a single lawsuit.  Defendants' arguments that the potential

liability of the absent [] parties renders those parties necessary are therefore without merit.

Moreover, the existence of a second law suit, in another forum, does not make the [absent

parties] necessary under Rule 19.") (citations omitted).[6]

## VII.    THE GALLERY HAS STATED CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Defendants state that the Archivio is a "non-profit association" organized under

Italian law.  (Defts' Br. at 1)  Such an association is akin to a partnership or joint venture.  This

renders each Defendant an agent of the others and liable for their conduct.  See, e.g., Pentagen

Technologies Intern., Ltd. v. CACI Intern. Inc., 1996 WL 435157 at *14 (S.D.N.Y. 1996) ("'As

agents for each other, partners and joint venturers are jointly and severally liable to third parties

for any wrongful act or omission of any partner acting in the ordinary course of the business of

the partnership.'") (quoting Gramercy Equities Corp. v. Dumont, 72 N.Y.2d 560, 565, 534

N.Y.S.2d 908, 911 (N.Y. 1988)).  Accordingly, the Complaint puts the individual Defendants on

adequate notice of the claims against them because each Defendant is liable for the wrongdoing

of any other.  At a bare minimum, discovery on this question is warranted.

---

[6] Even if Cardi were a "required party," Rule 19(b)'s factors would not counsel in favor of
dismissal because "judgment rendered in [Cardi's] absence would be adequate," Fed. R. Civ. P.
19(b)(3), the Gallery would not "have an adequate remedy if the action were dismissed for
[Cardi's] non-joinder," Fed. R. Civ. P. 19(b)(4), and any prejudice to the Gallery or Defendants
owing to Cardi's absence could be "lessened or avoided" by "other measures" such as a
subsequent suit against him. Fed. R. Civ. P. 19(b)(1), (2). In any event, even if this Court orders
Cardi's joinder, he would properly be "made [] a defendant," which would preserve diversity and
hence subject-matter jurisdiction. Fed. R. Civ. P. 19(a)(1), (2).

## VIII.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Where "a plaintiff has had no discovery, a plaintiff may defeat a motion to dismiss for lack of personal jurisdiction by pleading a prima facie showing of personal jurisdiction over defendants." Alpi USA, Inc. v. D & F Fashion Intern. Gemelli, 2007 WL 942096 at *2 (S.D.N.Y. Slip Op. Mar. 29, 2007) (Holwell, J.).

Given that each Defendant is the agent of the others, personal jurisdiction over any of them subjects the others to such jurisdiction as well. See, e.g., Morgenthau v. A.J. Travis Ltd., 184 Misc.2d 835, 843, 708 N.Y.S.2d 827, 832 (Sup. Ct. N.Y. County 2000) ("Under New York's long-arm statute, a court may exercise personal jurisdiction over a nondomiciliary who in person or through an agent commits a tortious act within the State. See CPLR 302(a)(2). . . . As co-participants in a tortious act committed in New York State, the defendants are properly subject to the State's long-arm jurisdiction."). See also Afloat in France, Inc. v. Bancroft Cruises Ltd., 2003 WL 22400213 at *5 (S.D.N.Y. 2003) ("Where a court has personal jurisdiction over a partnership, either because of the partnership's activities as a whole or the actions of a single partner acting on behalf of the partnership, the court has personal jurisdiction over all of the general partners. This is so because under New York law, a partner is an agent of his fellow partners, as well as of the partnership.") (footnotes and citation omitted).

There are sufficient facts to support, or at least justify discovery concerning, personal jurisdiction over Defendants. For example, besides agreeing to license her essay for inclusion in the exhibition catalogue for $300, which she collected when she traveled to the Gallery in New York, Sauzeau made an agreement in New York to sell a Boetti work, *Tutto*, to the Gallery for $600,000. (Leiber Decl. ¶¶ 9, 11) Additionally, it was in New York that Sauzeau negligently failed to express Defendants' later-voiced doubt regarding *Alighiero e Boetti*, which

Sauzeau said she was pleased with after examining out of its frame while at the Gallery in New York.  (Id. ¶ 10)  Defendants also sent their agent, Mr. Marescalchi, to New York to examine *I sei sensi* after agreeing to do so at the Gallery's request.  (Id. ¶ 18)  The Gallery has pleaded in the alternative that that examination was negligent, and any such negligence occurred largely if not entirely in New York.  (Compl. ¶ 64-66)  In addition, there is a history of business dealings between the Gallery and Defendants – including the sale, by Agata and Matteo Boetti, of approximately $100,000 worth of Boetti works to the Gallery (Leiber Decl. ¶ 13) – as well as, on information and belief, dealings between Defendants and other New York art institutions such as galleries owned by Barbara Gladstone and Larry Gagosian (id. ¶ 14) and the Museum of Modern Art (MoMA), PS1 Contemporary Art Center and Esso Gallery.  See http://www.archivioalighieroboetti.it/about_us.asp.  The Archivio also advertises in New York via its website, inviting people to pay the Archivio to examine Boetti works for authentication and inclusion in the *catalogue raisonné*.  See id.; http://www.archivioalighieroboetti.it/modulistica/CERTIFICATION%20FEES.pdf.  Given the sale of *I sei sensi* to a New Yorker for $250,000, there is a significant market for Boettis in New York, and Defendants potentially derive substantial revenue from their dealings with it.

These contacts with New York, alone or together with those likely to be uncovered during discovery, indicate that Defendants are doing continuous and systematic business in New York, thus subjecting them to jurisdiction pursuant to CPLR § 301.  Even if they are not doing such business in New York as to render them amenable to general jurisdiction, jurisdiction still exists under New York's long-arm statute, CPLR § 302, which confers jurisdiction based on a "single act."  See, e.g., Energy Brands Inc. v. Spiritual Brands, Inc., 2008 WL 2747276 at *4 (S.D.N.Y. Slip Op. July 16, 2008) ("Section 302 is a 'single-act statute

28

requiring but one transaction – albeit a purposeful transaction – to confer jurisdiction in New York."') (citation omitted).  Defendants' agreement to examine *I sei sensi* in New York was a "contract[] to supply . . . services in the state," CPLR § 302(a)(1), and any negligent inspection of that work or of those on display at the New York exhibition was "a tortious act within the state."  CPLR § 302(a)(2).  Specifically, Sauzeau's negligent failure to express Defendants' later-voiced doubt regarding *Alighiero e Boetti* when examining it out of its frame at the Gallery was a "tortious act within the state."  CPLR § 302(a)(2).  Alternatively, the aspersions cast on the works years after the exhibition constitute "tortious act[s] without the state causing injury to person or property within the state."  CPLR § 302(a)(3).  The business Defendants do with New York, other states or internationally likely is sufficient to subject them to jurisdiction under that subsection.  CPLR § 302(a)(3)(i), (ii).  Given that "a foreign defendant meeting the standards of § 302 will satisfy the due process standard," Energy Brands, 2008 WL 2747276 at *7, these contacts meet constitutional requirements for exercising jurisdiction over Defendants.  In particular, given Defendants' long history of business with the Gallery and other New York art institutions, they "should reasonably anticipate being haled into court []here."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

At the very least, the Gallery has alleged sufficient facts to have discovery on this issue.  A "plaintiff is permitted jurisdictional discovery if that plaintiff has 'at the very least . . . made a sufficient start.'"  Unique Industries, Inc. v. Sui & Sons Intern. Trading Corp., 2007 WL 3378256 at *6 (S.D.N.Y. Slip Op. Nov. 9, 2007) (citation omitted).  The Gallery has made more than a "sufficient start" in "pleading a prima facie showing of personal jurisdiction over defendants," Alpi USA, 2007 WL 942096 at *2, thereby making dismissal inappropriate.

29

## CONCLUSION

This Court should deny Defendants' motion to dismiss the complaint.

Dated: New York, New York
      August 14, 2008

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____
      Hugh J. Freund
      Matthew B. Larsen
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiffs Sperone Westwater Inc.
and Sperone Westwater Gallery, LLC*

30